HART *v.* RESPESS *et al.*, administrators.

1. Where land levied on under a mortgage *fi. fa.* is insufficient in value to pay the debt, and after a claim thereto interposed by a third person has been adjudicated against the claimant, a sale under the levy is prevented by another claim involving the same pretended title, the second claim being interposed by a person to whom the first claimant conveyed *pendente lite,* a receiver may be appointed to take and hold possession of the land and receive and preserve the rents and profits until the second claim shall be determined, both claimants being insolvent and having claimed by affidavit *in forma pauperis* and without giving bond and security. While the mortgagee has no legal title to the rents and profits, he has an equitable claim upon the same in so far as they may be needed to discharge so much of the mortgage debt as cannot be realized out of the *corpus* of the property, the facts of the case indicating that the debtors are insolvent and the creditor is likely to sustain loss. But in order to a right adjudication of the matter, the debtors, as well as the claimants, ought to be parties defendant in the suit, and direction is given that they be made parties.

2. There was no abuse of discretion in granting the injunction and appointing a receiver.

3. The evidence not being brought up by brief as the statute requires, the same is not before this court for consideration, and consequently the facts are taken for true as set out by the plaintiffs in their petition.     *Judgment affirmed, with directions.*

March 26, 1892. Argued at the last term.

Injunction and receiver. Mortgage. Practice. Before Judge MILLER. Schley county. At chambers, July 17, 1891.

The petition of J. R. Respess and Mattie Hart as administrators of Isaac Hart, against A. T. Hart, alleged as follows: Into the hands of petitioners as administrators came a mortgage given by A. F. Wiggins and J. S. Allums to D. F. Hart or bearer, dated September 24, 1879, upon the west half of land lot 173, the south

half of lot 174 and the whole of lots 176, 178, 179 and
206, the whole containing 1,012 1-2 acres more or less,
in the 30th district of Schley county. The right and
title to the mortgage was in Isaac Hart, their intestate,
at the time of his death, and nothing had been paid
thereon. At the same time he owned and possessed a
mortgage note given to him by Thomas and Adam
Smith, dated January 4, 1873, for the purchase money
of land lot 275, half of lot 274 and half of lot 147
in the same district and county, covering those lands,
not one dollar of which had been paid. Petitioners as
administrators foreclosed the first named mortgage in
the superior court, and obtained judgment at the October
term, 1886. Execution issued and was levied, November
3, 1886, on all the lands therein described as the
property of Wiggins and Allums. To this levy a claim
*in forma pauperis* was interposed by M. E. Hart, then a
resident of Sumter county, Ga., and the issue thereon
made was tried at the September term, 1888, of Schley
superior court, and a verdict and judgment were ren-
dered finding the property subject to the execution.
Then the sheriff readvertised the property for sale;
whereupon A. T. Hart interposed his claim *in forma
pauperis*, and the issue made thereon is now pending in
the superior court. Petitioners also foreclosed the mort-
gage against the Smiths, and obtained judgment at the
March term, 1886. Execution issued and was levied by
the sheriff, June 2, 1886, on all the property embraced
in the mortgage as the property of Thomas and Adam
Smith. To this levy A. T. Hart interposed his claim *in
forma pauperis*, and the issue made thereon is now pend-
ing in the superior court. M. E. Hart was in possession
of said lands from long before the foreclosure of said
mortgage until the fall of 1888, receiving the rent,
issues and profit of the same, of the annual value of
$1,200, under some pretended claim of right. In that

fall she abandoned the possession, removing to Cali-
fornia and leaving in possession A. T. Hart, who has
received the rents and profits since that time. M. E.
Hart did not file her claim in good faith but for the pur-
pose of holding the possession; she continued the claim
case from term to term as long as possible, that she
might hold and cultivate the lands and receive the rents
and profits arising from them. A. T. Hart does not
claim said land in good faith as the owner, but is seek-
ing to hold possession under a pretended deed from
M. E. Hart who never had any title to the premises, so
that he may as long as possible receive the rents. At
the trial of the claim case of M. E. Hart, A. T. Hart as
a witness swore that he was acting as the agent and
representative of M. E. Hart, and that he had no in-
terest in said lands except as her agent; but at the very
time he had in his possession a deed from M. E. Hart to
himself, which was not recorded until afterwards, and
under which he is now claiming title. After the issue
was determined against M. E. Hart, she and A. T. Hart
colluded and confederated by the making of this deed
to further continue and delay the collection of the claims
of petitioners. Neither of them have ever in good faith
claimed the right and title to the premises, but have
held possession in fraud of petitioners' rights. A. T.
Hart has no title other than such as he claims under the
deed from M. E. Hart, whose title has been adjudicated
in the superior court as to 1,012 1-2 acres of the land;
and he knew when he accepted the deed that she had no
title, and that her claim was pretended and fraudulent.
The two claims of petitioners now amount to nearly
$20,000, and interest on them is increasing. The prop-
erty on which they are liens is worth not over $7,000,
and is constantly being depreciated in value by cultivat-
ing and wearing out the land, by the houses and fencing
going to ruin and no improvements being placed

thereon, and by the cutting and felling of timber by A. T. Hart and his tenants. If the property were sold it would not pay the amount due on the liens. The rents and profits, of the value of $1,200 or other large sums, should in equity be appropriated to the payment of petitioners' claim, the *corpus* being wholly insufficient. M. E. Hart is a non-resident, and she and A. T. Hart are utterly insolvent, and would be unable to respond to an action for damages from the interposition of a frivolous claim. Waiving discovery, petitioners pray for injunction restraining A. T. Hart and his agents, tenants and employees from cutting or felling timber on the premises, or from otherwise committing waste thereon, and restraining him from conveying or disposing of any of the lands; that the claim cases now pending be merged into this litigation, and the rights of the parties be settled under decree; that a receiver be appointed to take charge of and rent out the premises, and hold the rents subject to the court's order; for decree that the lands are subject to petitioners' liens, and for order that they be sold, and the proceeds of sale and the rents be applied thereto, etc. Attached as exhibits are copies of various papers referred to in the petition. It was first presented to Judge FORT, who certified that he was disqualified from presiding because of interest.

There was a demurrer on the grounds that there is no equity in the petition; that it shows that litigation is already pending regarding the subject-matter; that the allegations are too vague and uncertain for a legal judgment; that it is directed alone against A. T. Hart, but charges such fraud and collusion and such interest in the lands as would necessarily make Mary E. Hart a party; and that petitioners have a clear common law remedy. There was also a plea setting up the pendency of the claims of A. T. Hart.

A. T. Hart answered: He was no party to the fore-closure proceeding, was not notified of it, and is not bound by it. The mortgage and notes given to D. F. Hart had long previously been cancelled, annulled and abandoned, and at the time of foreclosure had no legal force or effect, for, after D. F. Hart had taken the mort-gage and notes and had put the mortgagors in posses-sion, the lands had been sold by the U. S. marshal for the southern district of Georgia under a valid, subsisting and unpaid execution in favor of S. J. Armstrong against Isaac Hart (complainants' intestate), D. F. Hart and others, issued out of the circuit court of the United States for the southern district of Georgia, as the prop-erty of D. F. Hart, and purchased at that sale by Mary E. Hart; and under that sale, on July 4, 1882, Allums and Wiggins were turned out of possession by the U. S. marshal, and Mary E. Hart placed in possession, she having paid a valuable consideration for it. Under that purchase she continued to hold the possession and re-ceive the rents, profits and issues as her own absolute property, until March 24, 1888. The Armstrong execu-tion was a valid subsisting lien on the lands at said time and long anterior to the sale by D. F. Hart to Wiggins and Allums, and before the execution of the mortgage. Since their dispossession Allums and Wiggins have abandoned all claim or interest in the lands, have exer-cised no acts of ownership or control, and have admitted no indebtedness on account of the mortgage and notes, all of which was well known to Isaac Hart in his life-time and to complainants since his death; nor did they ever pay anything whatever on account of said pur-chase, both being utterly insolvent. If D. F. Hart ever made them any deed for the lands, this defendant does not know of it, and complainants have made no exhibit of it. On the trial of the claim interposed by Mary E. Hart the only evidence of title in Wiggins and Allums

was their possession of the land prior to its sale, and its purchase by Mary E. Hart. Respondent did testify on that trial that he was the agent of Mary E. Hart to get up evidence in support of her claim, particularly the Armstrong execution on which her title rested and without which her deed could not be introduced in evidence; but he denies that he then swore that he had no other interest but as agent for Mary E. Hart. He had made all sorts of efforts to get this execution and was unable to find it, it having been mislaid by one of the plaintiffs' counsel; and on that account only the property was found subject. Respondent has obtained it within the last five or six months. On March 24, 1888, finding Mary E. Hart in possession of the land as the owner, knowing her title was good and perfect, he purchased it from her in good faith, paying her for it $5,250, and she executed and delivered to him her deed for the same. He took possession, not to hinder or delay creditors nor to get the mere use or rents of the land, but as the absolute owner, believing that he received a perfect title as against the world. He has continued and is now in possession, receiving the rents, issues and profits, controlling the same as absolute owner. Whether any deed was ever made to Thomas and Adam Smith by Isaac Hart respondent does not know. They only remained in possession under the agreement of sale to them a very short time, when, failing to comply with their contract and being wholly insolvent, the trade was rescinded and possession of the land was restored to Isaac Hart, and they have had no possession or control of it since 1874; and these lands were sold at the same time with the balance of the tract, as the property of D. F. Hart, and purchased by Mary E. Hart and possession thereof taken under the marshal's deed, which fact was as well known to complainants when they foreclosed that mortgage as to anybody else. They were not in

possession, they were not claiming the land, they had no claim on it; but the whole thing was rescinded long before the purchase by Mary E. Hart. This land also was conveyed by her to respondent on March 24, 1882. It is true that Isaac Hart was, at the rendition of the Armstrong judgment and the issue of the execution, the owner of the land in controversy, known as the mill property, as he was when he traded with the Smiths for part of the land; but at the time of the mortgage of Allums and Wiggins to D. F. Hart, or before, the title had come to D. F. Hart who also was a defendant in this execution. Thus the United States marshal for the southern district of Georgia, on February 1, 1876, sold, under the Armstrong execution, lots 174, 175, 176, 177, 178, 179 and 206 in the 30th district of Schley county, as the property of Isaac Hart, when the same was bid off by B. J. Wilson, the owner of the execution, together with a storehouse and lot in Americus, as the property of Isaac N. Hart, another of the defendants in the execution and the husband of Mary E. Hart. Afterwards B. J. Wilson agreed with Isaac, D. F. and Isaac N. Hart to reconvey the lands and Americus property upon the payment to him of $1,200, and to sell and transfer the execution, having still a large balance due on the same, for $800; and as they did not have the money, they induced Barney Parker and C. C. Sheppard to advance it, and Wilson conveyed them the land and transferred them the execution as security to them for the money so advanced. Afterwards D. F. Hart paid Parker and Sheppard the $1,200 for the reconveyance of the mill tract, and they on September 20, 1877, conveyed the lands composing the mill tract by deed to D. F. Hart, which deed is exhibited; the deed from Wilson to Parker and Sheppard has been lost or destroyed without ever having been recorded. On March 30, 1879, Mary E. Hart paid to Parker and Sheppard

the amount of money they had advanced and paid for her to B. J. Wilson for the transfer of the execution to her, the same being $800 open and unsatisfied then, as it is now for a much larger sum; and having so paid said sum, Parker and Sheppard transferred the execution in writing to her. On July 4, 1882, for the purpose of collecting the balance due on this execution, she caused to be sold thereunder by the United States marshal, as the property of D. F. Hart, the same lots 174, 175, 176, 177, 178, 179 and 206 in the 30th district, the same having been previously levied by her direction and advertised according to law, at which she became the purchaser, and the marshal executed her a deed, and immediately afterwards forcibly ejected Allums and Wiggins who held under D. F. Hart. All of this was done with the knowledge and acquiescence of Isaac Hart and was acquiesced in up to his death, as well as by D. F. Hart and by Allums and Wiggins, Mary E. Hart being in possession all the time and receiving all the benefits thereof as the absolute owner up to the time she sold to respondent. Respondent did file his claim *in forma pauperis*, but it is not true that he was insolvent. He did have property at that time; he owned this land and other property; but he was unable really to give security, and had to make the claim in this way in order to interpose it at all. Since then his wife has died leaving her separate estate which has come to his possession by purchase from her and him, and it is now his individual property of the value of $4,000. There is but one mortgage on any of his property, which is for $1,200 and not due until October, 1895, and is on 600 acres of land in Marion county. He has good and solvent notes on other persons largely in excess of that amount. The property acquired from his children that belonged to his wife, the mill property and all the balance of his property is entirely unin-

cumbered, and without this he is entirely free from all debts; and hence he answers that he is perfectly solvent and able to respond to all past claims that may come or be made on him. It is not true that he has been guilty of any waste on the lands or that he is letting them fall into dilapidation; on the contrary he is keeping up the plantation and improving it largely and beneficially as any other owner of property. He has cut no timber except as it was necessary for firewood or plantation uses; and instead of depreciating, it has enhanced in value by reason of the improvement he has made on it and the condition in which he has kept it, as well as by reason of the general enhancement in value of all other lands; such enhancement being, however, largely if not wholly due to his own attention and care.—By way of cross-petition he says that neither he nor Mary E. Hart were parties to the foreclosure proceedings, and had no notice of the same and no right to intervene. At that time respondent had no interest in the matter one way or the other. The foreclosure proceedings "were illegal and done for the purpose of in good faith collecting said mortgages in this indirect way that they could not be directly by an attack on the title of the said Mary E. Hart, in a proper proceeding for that purpose wherein she would be a party and heard in support of her title." The proceedings were void because the petition for foreclosure was presented to Judge FORT, then the presiding judge in that court, who, although then disqualified as he is now by reason of his interest in the litigation, granted the rule *nisi*, to which neither Mary E. Hart nor respondent could object, they not being parties and having no notice. Respondent submits that the grant of the rule *nisi* was null and void, and formed no predicate for the rule absolute afterwards granted, and which itself is also void for want of a legal judgment *nisi*. The mortgagors or defendants in the

foreclosure proceedings never appeared in answer to the
rule *nisi*, having no interest in the same, nor were the
proceedings taken for the purpose of affecting them but
to affect the title that respondent holds under Mary E.
Hart. The whole proceedings were grossly iniquitous,
without foundation, and without notice to Mary E. Hart
the owner of the lands. "The mortgages notes have
been cancelled and abandoned and at an end on the trial
of the said claim case in the superior court of said county
wherein Mary E. Hart was claimant resulting in the
verdict condemning the property as aforesaid and
wherever neither the said Mary E. Hart nor this re-
spondent could go between or be heard for the reasons
aforesaid." Mary E. Hart is a material and necessary
party to this proceeding. Respondent prays that the
judgments, foreclosure proceedings, levies, claims and
judgment on the same be set aside as null and of no
force against respondent or Mary E. Hart and the land
in dispute, and that the mortgages and judgment and
order of court based on the same be forever enjoined.
By amendment he prays that the judgment on the ver-
dict finding the property subject be set aside and a new
trial be granted, on the ground that at the trial the
claimant, M. E. Hart, could not produce and put in evi-
dence the Armstrong execution, after having made the
most diligent search and after moving for a continuance
on account of the absence of the execution, which was
denied; the execution having subsequently been found,
and respondent contending that had it appeared in evi-
dence the result would have been different.

After the hearing, the judge granted an injunction
until the further order of the court, restraining A. T.
Hart, his agents and confederates, from cutting or fell-
ing any timber on any of the lands in dispute or from
committing any waste thereon, and also restraining him
from conveying or disposing of any of said lands.

As to the lots of land embraced in the claim filed by M. E. Hart and found subject to the mortgage execution against Wiggins and Allums, a receiver was appointed and ordered to preserve and protect said property from waste and trespass, to collect the rents for the ensuing year, and to keep them until further order, but not to interfere with the proper possession, use and cultivation of said lands by any renters or tenants thereof during the ensuing year. The application for receiver of the lands described in the execution against the Smiths, and for the collection of the rents of the same, was refused. A. T. Hart excepted. The evidence as it comes to this court is not briefed. The greater portion of it consists of affidavits and documents each of which is made a part of the record by order of the judge.

R. F. LYON, for plaintiff in error.

GUSTIN, GUERRY & HALL, B. P. HOLLIS, E. A. HAWKINS, BUTT & LUMPKIN and W. H. McCRORY, contra.