WINTHROP et al. v. WELLING et al.

(Supreme Court, Appellate Division, First Department.    March 6, 1896.)

EASEMENTS—MORTGAGE OF SERVIENT ESTATE—FORECLOSURE—SURPLUS.
    The grant of an easement in land subject to a mortgage vests in the owner of the dominant estate an interest in land in the servient estate entitling such owner to such a proportion of any surplus realized by foreclosure of the mortgage as the value of the easement bore to the value of the whole servient estate.   O'Brien and Patterson, JJ., dissenting.

Appeal from special term, New York county.

Action by Robert Dudley Winthrop and others, as executors, against Urania P. Welling and others, to foreclose a mortgage.   A surplus of $4,019.69 was realized by the foreclosure sale decreed. Mary L. Barbey, a defendant, as owner of the equity, commenced proceedings for the surplus, in which defendant Mary O. Maxwell filed a claim thereto as owner of an easement in the land subject to the mortgage.   From an order awarding the entire surplus to Mary L. Barbey, Mary O. Maxwell appeals.   Reversed.

The mortgaged premises were owned in December, 1891, by the defendant Welling, subject to the mortgage just foreclosed. The adjoining lot to the west was owned by one Woolley. Woolley and Welling entered into a written agreement under seal, which was recorded, whereby Woolley agreed that a certain portion of his lot should forever remain unbuilt upon, and Welling made a similar agreement with reference to an adjoining portion of her lot; the express purpose being to preserve light and ventilation for the rear of both houses. The claimant, Barbey, became the owner of the equity of redemption of the Welling house, expressly subject to this agreement. The defendant Maxwell has succeeded to the ownership of the Woolley premises, subject to this agreement. The defendant Maxwell claimed before the referee that she was entitled to the surplus, and offered to show the value of her interest in the mortgaged premises. The testimony was excluded under objection, the referee holding that her claim could not be considered. The court at special term confirmed the report of the referee.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edward E. Sprague, for appellant.
Daly, Hoyt & Mason, for respondent.

INGRAHAM, J.   The appellant and respondent were the owners of adjacent premises between Seventy-Fourth and Seventy-Fifth streets, Fifth and Madison avenues, in the city of New York.   By an agreement that had been executed by former owners of these two properties, an irregular strip of land upon the rear of the said lots was always to remain unbuilt upon, it being expressly provided that this covenant should run with the land, and should bind the heirs and assigns of the parties to such agreement.   It was not disputed but that the effect of this agreement was to give to the land of each of the parties to it an easement in the land included within the strip described belonging to the other party to the agree-

ment. Thus the strip of land described in the agreement that belonged to the party of the first part would be subject to an easement appurtenant to the property of the party of the second part, and the strip of land described in the agreement belonging to the party of the second part would be subject to an easement appurtenant to the property of the party of the first part. The property of the party of the first part to this agreement was subject to a mortgage at the time the agreement was executed, which was superior to the easement granted by the agreement in question. But by this agreement an interest in the real estate therein described as belonging to the party of the first part was conveyed to and vested in the party of the second part, subject to such mortgage. That mortgage was foreclosed, and the property sold under a decree in the action brought to foreclose it; from which sale there resulted a surplus of $4,019.69; and in surplus money proceedings the whole of that surplus was awarded to the respondent, on the ground that the appellant, as the owner of the land to which the easement in question was appurtenant, had no interest in the land which would entitle her to an award of any portion of such surplus money. That position, I think, was erroneous. The referee seems to proceed upon the theory that, as the appellant had no lien upon the property that could be enforced, she was not entitled to any of this surplus money. It is clear that she had no lien. Her right does not depend upon the existence of a lien, but upon an interest in the property itself which was appurtenant to the land that she owned that was adjoining. The easement was appurtenant to the property owned by the appellant, and the property owned by the respondent was subject to that easement. The property of the appellant was an interest in the land of the respondent, the land of the appellant being the dominant estate, and the land of the respondent being the servient estate. The appellant thus became an owner of an interest in the land itself. It is true that such interest was subject to the mortgage foreclosed; but, subject to such mortgage, it existed as such an interest in the servient estate as would a tenancy by an inchoate right of dower, a tenancy by the curtesy, or any other interest in the estate itself. Upon the foreclosure of the mortgage, such easement having been destroyed by the conveyance of the referee, the surplus money would represent the estate in the land, which would include the interest or ownership of both the dominant and servient estates. A lien may be created by parol, but an easement is an interest in land, and a parol contract creating it is void under the statute of frauds. Wiseman v. Lucksinger, 84 N. Y. 37. This sum of $4,019.69 thus stood as the value of the land covered by the mortgage, subject to the mortgage, and, it being in court, it was to be distributed by the court to those having liens upon such land, and, upon the extinguishment of all liens, to the owners of the land itself. And this appellant, as the owner of an interest in the land, was entitled to that proportion of the surplus money that her interest in the land bore to the whole fee of the land. The object and purpose of the foreclosure suit was the distribution of the fund arising upon the sale; and the rights

and equities of the defendants who were lienors or claimants of the equity of redemption were before the court.   Bergen v. Carman, 79 N. Y. 159.   The appellant was made a party defendant because she had such an interest in the land as that the sale of the land by the referee in the foreclosure suit would convey her interest in the land to the purchaser; and such conveyance did convey her interest in the land, and such interest as she had vested in the grantee in the referee's deed.   She was entitled, therefore, to such proportion of the surplus money as would represent her interest in the estate thus granted by the referee; and it was the duty of the referee to have ascertained just what that interest was, and just what proportion it bore to the whole estate.

The easement of the appellant, however, was not an interest in all of the property conveyed by the referee.   It was merely an easement affecting the property described as the space of land which should always remain unbuilt upon, belonging to the party of the second part in the agreement creating the easement, being a piece of land 38 feet and $9^{1}/_{2}$ inches in length, 5 feet in breadth upon the center line of the block, and 7 feet and $^{7}/_{100}$ of an inch in breadth upon the southerly side of said strip.   The appellant had no interest in the remainder of the land covered by the mortgage, and was not entitled to any of the proceeds of such land.   It was the duty of the referee, therefore, to have ascertained the proportion that this strip of land bore to the whole property mortgaged, and then to have apportioned the surplus money in the same proportion, and to have distributed the proportion of the surplus money standing in place of such strip of land between the appellant and the respondent, giving to the appellant the value of her easement in this strip of land, and to the respondent the balance of the amount of the surplus money apportioned to this strip of land.

The interest that these two parties held in this surplus money that was the proceeds of the sale of this strip of land bears a close resemblance to that of the owner of the fee of land subject to an easement where the land has been taken under the right of emi· nent domain; and in such a case it is settled that the amount awarded for the value of the land stands in the place of the land, and is to be divided among those owning the land, and a person owning an easement in such a strip of land is entitled to a substantial amount of such award.   In re Eleventh Ave., 81 N. Y. 446. Such an award was there apportioned between the owner of the dominant and the owner of the servient estate, the court saying:

"But the commissioners having, under the direction of the court, awarded substantial and just compensation for the rights and interests of all parties interested in the land, and having treated them as subject to no public rights, the aggregate of this compensation must represent the entire value of the land taken; and there seem to be no means of equitably adjusting the rights of the parties except by pursuing the course adopted by the learned referee,— of treating all these rights and interests as having been taken by the city, and apportioning the awards among the several parties in whom these rights and interests were vested."

That is, I think, what should be done in this case.   The referee's deed having conveyed the interest of this appellant, the surplus

money stands in the place of the whole property, subject to the mortgage. In that case a distribution of one-fourth of the award to the servient estate and three-fourths to the dominant estate was sustained. Under this rule it may be extremely doubtful as to whether the appellant would be entitled to a very large award, as it would seem that the proportion of the surplus money that should be·awarded to this strip of ground would be comparatively small, and the award would be limited to the value of the easement in each strip. The appellant,.however, is entitled to have that amount determined, and for that purpose the order should be reversed, and the case sent back to the referee to ascertain the interest of the appellant in this award, applying the principles above stated. Ten dollars costs and the disbursements of this appeal to the appellant to abide the final result of the proceeding.

VAN BRUNT, P. J., and WILLIAMS, J., concur.

O'BRIEN, J. This court is not now directly concerned with the question as to the extent or amount of Mrs. Maxwell's interest in the fund. She does not claim to be interested in the whole premises, but only to that part over which she had an easement. But, if she had any interest in that part, her offer to prove the value of such interest should have been entertained; and the question upon this appeal arises out of the ruling by the referee in excluding evidence of the value of appellant's interest in the premises, and in refusing to consider her claim to the surplus moneys. This surplus arose by foreclosure of the mortgage, and the premises had been converted into money, the whole of which has been awarded to Mrs. Barbey as the owner of the equity of redemption. The appellant contends that this award was illegal, the contention being that this sale under foreclosure, as between the parties to this appeal, was, in effect, a sale of an interest in real estate belonging to the appellant, for which she should receive compensation out of the surplus. The referee refused to recognize this claim, basing his ruling upon the ground that the appellant had no lien upon the premises. While this conclusion is right, it does not dispose of the appellant's contention, because she was not advancing it as a lienor, but was insisting that she had an interest in the land which was sold, out of which the surplus arose, and that of this surplus she should receive an amount commensurate with her interest. The question, therefore, narrows down to this: Did the appellant, by virtue of the agreement, acquire such an interest in the property foreclosed as entitled her to receive any of the proceeds resulting from a sale and the creation of a surplus after the payment of the mortgage? It must be conceded that the appellant had, by virtue of·the agreement of December, 1891, an easement in the mortgaged property, Mrs. Barbey's predecessor in the title having conveyed by such agreement to Mrs. Maxwell's predecessor in title, for a valuable consideration, an easement in the premises, subject, however, to an outstanding mortgage. The agreement creating the easement by its terms does not grant any part of the fee, but re-

serves a certain space in the rear of each lot for light and air, which agreement, being subsequent to the mortgage, was cut off by the foreclosure and sale; and thereby both Mrs. Barbey and Mrs. Maxwell have lost their rights in the respective lands of the other party, and Mrs. Maxwell now holds her lot free and clear of any easement in favor of what was formerly Mrs. Barbey's lot. Prior to such foreclosure, Mrs. Maxwell could compel the person owning the adjoining premises to respect the easement, either by a suit in equity restraining the breach of the covenant, or by an action for damages in case the covenant should be broken. But she claims more, and that, by reason of her rights having been cut off by the foreclosure of the mortgage, to which they were necessarily subject, she now occupies a better position than the one she had before, and is to be treated as if she had been a joint owner of the fee. We fail to see how she can maintain this position as joint owner in the whole or part of the premises, in the absence of any conveyance to her of any portion of the land in question, or of any agreement which creates a right or title in and to any portion of the land itself. As stated, what she acquired was an easement; and that such easement is property, and, in a certain sense, an interest in the land, must be conceded; but it is not such an interest in land as can be carved out and sold and conveyed, nor is it an incumbrance enforceable against land. The owner of the premises to which it is appurtenant has no estate in or control over the servient property. The very essence of the easement created, and the terms of the agreement, show this. It is an accommodation, convenience, service, or privilege one man enjoys in the land of another. Here it is a simple negative easement, prohibiting the owner of the servient estate from using his land as he might have done but for the agreement, and the owner of the dominant land cannot enter nor exercise any power or dominion over it. What was covered by the mortgage, which was prior and superior to this agreement, was all the land of the mortgagor, the surplus money representing that land for the purpose of paying incumbrances and liens, and, after they are paid, it belongs to the owner of the equity of redemption.

The theory of the claimant, Maxwell, is that she has some right in the land that is transferred to the surplus fund upon a supposed analogy between her case and that of an award for private property taken for public use, where the easements of abutting owners are compensated for. The analogy, however, does not hold good, for that is done under statutory proceedings, and the compensation for taking the easements is made directly through such proceedings, and as a necessary part thereof. In re Eleventh Ave., 81 N. Y. 447. In the case cited, which was a proceeding to acquire lands for streets in the city of New York, an award was made for the full value of the land to unknown owners, and it was therein held that the owner of the fee was not entitled to the whole award; that, where a perpetual easement in the land is vested in another person, the latter is entitled to the value of his easement. Nor is the appellant's interest to be likened to the claim of a lessee in possession

under a covenant for quiet enjoyment, as will be seen by reference to the principle controlling in cases of that kind, and clearly enunciated in the case of Clarkson v. Skidmore, 46 N. Y. 308, where the opinion was written by the same learned judge who delivered the opinion of the court in Re Eleventh Ave., supra. In Clarkson v. Skidmore, a lessee for years of mortgaged premises held under a lease containing a covenant of quiet enjoyment, upon foreclosure and sale under the mortgage, was held to be entitled to receive out of the surplus moneys the value of the use of the premises for the remainder of his term; and it will be seen by a perusal of the opinion that it was expressly put upon the ground that the lessor "had granted the term and covenanted for the quiet enjoyment during that term. He was therefore bound to protect the estate of his lessee against those claims." And "the surplus moneys in controversy belonged to the parties who had estates or interests in the land sold which were cut off by the sale. The real estate having been converted into money, several parties were entitled to be paid out of the fund the equivalent of their respective interests, in the order of their priorities as between each other." The distinction we have sought to point out, that the award to the lessee in such case was in accordance with the covenants existing between the lessor and lessee, and the equities resulting therefrom, is clearly pointed out in Burr v. Stenton, 43 N. Y. 466, wherein the importance of the presence or absence of the covenant is emphasized. In the latter case the lessor, at the time of giving the lease, had no title in the land, and entered into no covenant, express or implied, for quiet enjoyment, except against his own acts; and, though he subsequently acquired title, it was held that this did not inure to the lessee by virtue of the lease, but that the latter held the premises as against the lessor by virtue of the lessor's personal covenant, which operates by way of estoppel only to prevent his interference with the lessee's possession, and in no way binds him to protect the lessee against the foreclosure of previous liens upon the property, and that, consequently, a mortgage upon the premises having been foreclosed, and a surplus arising, it was held that, as between them, the lessor was entitled to the whole, the lessee having no right to any portion thereof. As said in the opinion:

"It is therefore entirely clear that the appellant [lessee] had no remedy against the respondent for the recovering of damages by reason of the failure of the title of both by sale of the premises upon a foreclosure of the mortgage. How, then, has he any equitable lien upon the surplus arising upon such sale for any such compensation? If he has, the singular case is presented where the lessee can obtain compensation when there was a surplus upon sale by virtue of a prior incumbrance, when he would have no valid claim in case the incumbrance exhausted the entire proceeds. This is sought to be sustained upon the ground that the estate of the lessee in the land has been sold, and to work out an equity in his favor, for the reason that the value of his estate so sold has gone to increase the surplus arising upon the sale, and that, therefore, he has an equitable claim to indemnity for the value of his estate out of the surplus. * * * When the title of the lessor is destroyed or overthrown, it is equally obvious that all titles derived from him by lease fall with it. * * * That title was subject to the lien of the mortgage, and liable to be destroyed by its foreclosure,—a fact which actually occurred. Upon its occurrence and sale of the premises by virtue thereof, the estate both of the les-

sor and lessee terminated. It is absurd to say that the estate of the lessee for the unexpired term specified in the lease was sold, for the reason that all the estate he ever had therein was defeasible upon and defeated by the sale upon the foreclosure of the mortgage. This left him to his remedy upon the covenants in his lease, if any."

And to the suggestion that the lessor should have paid off the mortgage, and thus protected the title of the lessee, the answer is furnished by the statement that "this he [the lessee] could have done by paying the amount to the holder of the incumbrance, and taking an assignment thereof to himself."

We think that this case, in principle, is applicable upon the facts here appearing. The easement which the appellant acquired was subject to the mortgage which has been foreclosed. This right was, at best, but a defeasible interest in the property. The effect of the foreclosure was to vest in the purchaser the entire interest in the estate of the mortgagor and the mortgagee as of the date of the mortgage, and unaffected by subsequent incumbrances and conveyances by the mortgagor. Rector,.etc., v. Mack, 93 N. Y. 488. In that case, as in this, an easement was created subject to a mortgage, and the property was conveyed subject to the mortgage, but without any liability on the part of the person who took the conveyance to pay the same; and, although the latter purchased on the foreclosure, it was held that she owed no duty to the plaintiff or mortgagee requiring her to pay off the mortgage, and so there was no equity preventing her from asserting her title; and it was therein said that the plaintiff, to save its easement, should have appeared in the foreclosure suit, and, by offering to bid the full amount of the mortgage debt and the costs upon the sale, subject to the easement, should have asked to have the judgment modified so as to direct such a sale. So here, what was created was an easement for the mutual benefit of the owners of the two lots that adjoined each other, and such an easement as neither could deprive the other of the use of, but which they have both lost, not by the act of the other, but by the foreclosure and sale of the mortgage which was in existence at the time the agreement was entered into, and to which the agreement was necessarily subject. Whatever right Mrs. Maxwell may have had under it to have the space agreed upon on the adjoining lot kept open, which a court of equity would enforce, it was one which could be enforced only while Mrs. Welling or her grantee remained the owner of the lot; and when the lot was sold under the foreclosure of the prior mortgage, and the ownership passed to another person, all rights that either had under it were extinguished. All that it was in the power of Mrs. Barbey's grantor to give to Mrs. Maxwell's grantor (the lot being mortgaged) was the right to enjoy the space agreed upon as long as it was in her power to give it, which she carried out when she sold the lot by granting it subject to the easement. This was all that she could give, and all that Mrs. Maxwell's grantor could receive, and they both had and enjoyed all that they were entitled to under the agreement. We fail to see, therefore, what foundation there can be for the claim of Mrs. Maxwell against Mrs. Barbey, or what

kind of action she could maintain upon such a state of facts, either legal or equitable. As against the purchaser upon the foreclosure, no equitable action would lie to restrain the use of the land purchased in any way that the latter might see fit to use it; and, if the land had sold for just the amount of the mortgage, we do not see that there would have resulted to Mrs. Maxwell, as against Mrs. Barbey, any action at law for damages, because the injury was not one sustained by the wrongful act of another, nor was it an injury that was covenanted against by Mrs. Barbey or her grantors, nor was the loss of the use and enjoyment of this space brought about by any wrongful act of Mrs. Barbey's, but was the result of an act the possibility of the happening of which Mrs. Maxwell's grantor knew when he made his agreement, the agreement being necessarily subject to the mortgage, and no claim being made that there was any statement, misrepresentation, or wrongful act in respect to the existence of such mortgage.

It therefore narrows down to this: That while, in one sense, Mrs. Maxwell acquired an interest in the land of Mrs. Barbey by reason of the easement created, this did not constitute her a joint owner or tenant in common, nor confer upon her any estate in the fee of the land. It was created by an agreement containing no personal covenants which would give any right to damages, and was a defeasible interest, because expressly subject to the mortgage. The effect of the foreclosure, therefore, must be regarded as within the contemplation of all the parties to the agreement, which, by destroying the easement that Mrs. Maxwell had, equally took away and destroyed the mutual easement given in the property of Mrs. Maxwell. Upon the ground, therefore, that the appellant had no such interest in the land as entitled her to be compensated out of the surplus, the order appealed from should be affirmed, with costs.

PATTERSON, J., concurs.