In the Matter of the Distribution of Certain Moneys Arising upon the Sale of Real Property in the Foreclosure Action Entitled Supreme Court, Monroe County, JOHN LOBBETT, Plaintiff, *v.* RILEY GALPIN, KATHERINE E. GALPIN, His Wife; HOWARD VAN VOORHIS and NELLIE A. VAN VOORHIS, His Wife; NAOMI R. BAREIS, EUGENE G. SACKETT CO., INC., EDWIN A. KITTREDGE, J. P. CUNNINGHAM LUMBER COMPANY, INC., Defendants. HOWARD VAN VOORHIS and Another, Appellants; EUGENE G. SACKETT CO., INC., and Others, Respondents.

Fourth Department, January 8, 1930.

*Lynn Brothers* [*William F. Lynn* of counsel], for the appellants.

*MacFarlane & Harris* [*Harry Z. Harris* of counsel], for the respondent Eugene G. Sackett Co., Inc.

*Backus & Backus*, for the respondent Edwin A. Kittredge.

*Alcott Neary*, for the respondent J. P. Cunningham Lumber Company, Inc.

THOMPSON, J. This is an appeal from an order confirming a referee's report in surplus money proceedings. The contention is between the owner of the premises sold and lienors. The question is whether or not a mechanic's lienor, made a party defendant in a mortgage foreclosure, may default in answering and still prove his lien in a surplus money proceeding.

The issues arose prior to the amendments of the Lien Law made by chapter 515 of the Laws of 1929. Sections 41, 43 and 44 of the Lien Law provide for an action to enforce liens on real property. Subdivision 3 of section 44 (as amd. by Laws of 1928, chap. 13), among other things, contains the following: " Every defendant who is a lienor shall, by answer in the action, set forth his lien, or he will be deemed to have waived the same, unless the lien is admitted in the complaint, and not contested by another defendant." Section 17 (as amd. by Laws of 1916, chap. 507) provides: " If a lienor is made a party defendant in an action to enforce another lien, and the plaintiff or such defendant has filed a notice of the pendency of the action within the time prescribed in this section, the lien of such defendant is thereby continued. Such action shall be deemed an action to enforce the lien of such defendant lienor." Subdivision 2 of section 19 of said act (as amd. by Laws of 1916, chap. 507) further provides that a lien may be discharged " by failure to begin an action to foreclose such lien or to secure an order continuing it, within one year from the time of filing the notice of lien, unless an action be begun within the same period to foreclose a mortgage or another mechanic's lien upon the same property or any part thereof and a notice of pendency of such action is filed according to law." It is claimed that by force of these provisions the referee erred in permitting proof of the mechanic's liens in this proceeding " (1) because they had been waived by failure to set them up by answers in the action, and (2) because this is a special proceeding and not an action in which latter only a mechanic's lien can be determined." It is conceded that neither of the lienors served an answer to the complaint in foreclosure but that they did file notices of appearance. The judgment was the usual default judgment of foreclosure and sale. The complaint is not included in the agreed statement of facts.

The lienors were necessary parties (Civ. Prac. Act, § 1079, subd. 1, ¶ 6, as amd. by Laws of 1923, chap. 176), but they did not waive their liens by failing to answer, and their rights are expressly saved to them by Rules of Civil Practice, rules 262 and 263, which provide a proceeding for the establishment and payment of any unsatisfied liens on property sold in foreclosure actions from the surplus.

The provisions of subdivision 3 of section 44 of the Lien Law

have no application to actions to foreclose mortgages or to surplus money proceedings, nor do they either directly or by implication repeal or modify any of the provisions of the Civil Practice Act or of the Rules of Civil Practice relating to either. By their terms they apply only to the action authorized by section 41 of the Lien Law. Such provisions will not be read to take away a long-established and frequently used remedy, because not only do they fail to contain clear and direct expression of an intention to do so, but there is nothing in any of them from which an inference can be drawn or implication arise to such effect.

" A party has a right to sue on any cause of action which he holds, and any statutory exception to that right must be distinctly expressed." (*Saxe* v. *Peck*, 139 App. Div. 419.)

" An intention of making an innovation in a long established rule of law is not imputed to the Legislature in the absence of a clear manifestation of such intention. * * * This principle is analogous to the doctrine that statutes in derogation of the common law are to be strictly construed." (1 McKinney's Consol. Laws, 155, 211; *Taylor* v. *Mayor, etc., of City of New York*, 82 N. Y. 10; *Seligman* v. *Friedlander*, 199 id. 373.)

Thus we see that the statute which authorizes the enforcement of mechanics' liens by action is not exclusive, there being saved to lienors the same remedies for the determination and enforcement of their liens that existed before the enactment of this statute. (*Lichtenstein* v. *Grossman Construction Corporation*, 221 App. Div. 527; 248 N. Y. 390.)

Moreover, the courts have held that a mortgage foreclosure is not an action to " enforce a lien " within the meaning of the Lien Law. " The words ' another lien,' as used in the statute [Lien Law, § 17], refer to another mechanic's lien, not to the lien of a mortgage." (*Philbrick & Brother* v. *Florio Co-operative Assn.*, 137 App. Div. 613; affd. on opinion of SCOTT, J., in the Appellate Division, 200 N. Y. 526.)

By the amendment of 1916 (Laws of 1916, chap. 507, § 11) an action to foreclose mortgages was added to subdivision 2 of section 19, so that a lien is now continued by the beginning of such an action, thus covering the point of the above decision. (See, also, *Lincoln National Bank* v. *Peirce Co.*, 228 N. Y. 359, 369.)

A proceeding after a mortgage foreclosure to distribute surplus moneys is a special proceeding. (*Velleman* v. *Rohrig*, 193 N. Y. 439; *House* v. *Amsdell Brewing & Malting Co.*, 133 App. Div. 486, 488.) A person whose easement in the premises is destroyed by the foreclosure is entitled to compensation out of the surplus money. Questions of costs are sometimes determined in distribution pro-

ceedings. (*Bushwick Savings Bank* v. *Traum*, 23 App. Div. 532.) The surplus stands in place of the land, and liens against the land are payable out of the surplus as far as it w ll go. (*Winthrop* v. *Welling*, 2 App. Div. 229.) The powers of a referee in a surplus money proceeding are very broad. He can take evidence and investigate any legal or equitable question pertaining to the issue. He is required to find facts and conclusions of law. (*Baker* v. *Baker*, 70 Hun, 95.) He may exercise an authority as extensive as the claims themselves, and the legal and equitable objections that may be made to their allowance. (*Kingsland* v. *Chetwood*, 39 Hun, 602.) And he has jurisdiction to pass upon the rights of all mechanics' lienors who were such at the time of the commencement of the foreclosure and subsequent to the recording of the mortgage. (*Lichtenstein* v. *Grossman Construction Corporation*, *supra*.)

In support of the claim that questions arising under liens against real estate in foreclosure should be disposed of in the action, and in answer to the suggestion that such practice would result in delay for the plaintiff, it is urged that section 264 of the Civil Practice Act, which provides that controversies between defendants shall not delay the judgment to which the plaintiff is entitled, should control. It must be remembered that this section requires that a copy of the answer of such a defendant must be served upon defendants to be affected by the determination, or their attorneys. Doubtless this remedy has always been open to holders of mechanics' liens in foreclosure. (*Flaum* v. *Picarreto*, 226 N. Y. 468.) But in no event can it be claimed that it is in exclusion of the remedy supplied by surplus money proceedings, or that the failure of defendants to join issue over a controversy existing between them in such an action would preclude them from pursuing other appropriate action.

It seems that prior to the passage of the Revised Statutes, which took effect in 1830, it was the practice to ascertain the amount of all incumbrances and to adjudge the rights of all the defendants before making a decree for the sale of the mortgaged premises. This ofttimes resulted in delay to the plaintiff in the enforcement of his claim, though his mortgage was admitted to be valid, in order that subsequent incumbrancers might litigate as between themselves their rights to surplus. To obviate this trouble, the Revised Statutes contained provisions afterwards re-enacted in the Code of Civil Procedure authorizing the payment of the surplus into court, and Rules of the Court of Chancery were framed, providing for application for the payment of surplus moneys by lienors and others entitled thereto which were in effect the same as are now found in Rules of Civil Practice, rules 261, 262 and 263. The object

of these rules was to lighten the expense of foreclosure cases without impairing in any way the rights of others against the mortgagor, or rather in the equity of redemption. They (the rules) only altered the old practice of the court and directed the mode by which the owners of liens inferior to the mortgage foreclosed might ascertain their rights in any surplus, and since their passage, it is no longer proper in mortgage cases for " defendants whose claims are upon the equity of redemption merely, and who have no interest in the mortgaged premises in opposition to the complainant's claim * * * to litigate their claims to the surplus as between themselves, until it is ascertained that there will be a surplus." ( *Union Ins. Co.* v. *Van Rensselaer,* 4 Paige, 85; *Eagle Ins. Co.* v. *Flannigan,* 1 How. Ct. App. Cases, 311; *Miller* v. *Case,* 1 Clarke, 395; *Farmers' Loan & Trust Co.* v. *Seymour,* 9 Paige, 538; *Smart* v. *Bement,* 4 Abb. Ct. App. Dec. 253 [3 Keyes, 241]; Thomas Mort. [2d ed.] 678.)

From the above it will be seen that the practice of ascertaining and paying liens in foreclosure cases by resort to surplus money proceedings was established for the purpose of meeting conditions quite like those before us.

Thus we see conditions have not changed and the reasons for this practice, compelling when first advanced, are equally cogent to-day. There is no legal ground for setting aside or modifying this order, nor do we find practical reasons for changing or restricting the practice followed here in any of the respects in which the case has been presented or considered.

We think the referee and the Special Term were correct in their conclusion in this case, and the order should be affirmed, with ten dollars costs and disbursements.

All concur. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Order affirmed, with costs.