# In the Matter of the Estate of MARY ELIZABETH KIDD, Deceased.

Surrogate's Court, New York County, December 29, 1936.

*Smith & Bowman [William J. Graham* of counsel], for the accounting trustee.

*Wollman & Wollman [Achilles H. Kohn* and *Aaron B. Coleman* of counsel], for the executors of the Henry Wollman Estate, mortgagee.

*Kantrowitz, Esberg & Solins [Benjamin Esberg* of counsel], for Jean P. Miller and Hannah P. Miller, legatees, objectants.

*Edmund·J. Delaney*, special guardian for an incompetent.

*Thomas E. White*, for the Fidelity and Deposit Company of Maryland.

DELEHANTY, S. Since April, 1934, the accounting trustee of deceased has had the record title to and has collected the rents from certain real property upon which. deceased in her lifetime held a junior mortgage. In the lifetime of deceased two mortgages which were superior to hers in right were consolidated and extended as a first lien pursuant to a consolidation and extension agreement. Deceased subordinated her junior mortgage to this agreement. The respective mortgages so consolidated contained the usual covenants that the mortgagor would pay taxes, assessments and water rates. They contained as well the stock clause providing for assignment of rents and the appointment of a receiver on default. The junior mortgage held by deceased contained like provisions. The trustee of deceased held the junior mortgage as part of the trust capital. When defaults occurred he took a deed to the property in lieu of foreclosure. His collection and disposition of the rents is unchallenged by the first mortgagee for the period ending February 25, 1936.

The consolidation and extension agreement provided among other things: " In the event of any default under said mortgage, or of the failure of the borrower to perform any of its obligations hereunder, such rents and profits, due and to become due, are hereby assigned to the holder of said mortgage without any act of the borrower, and the holder hereof shall have the right to collect said rents and profits without taking or demanding possession of said premises, and without bringing any foreclosure suit, and without having any receiver appointed, and may apply said rents and profits toward the payment of any amounts then or thereafter to become due under said mortgage."

Interest upon the consolidated first mortgage was paid up to February 25, 1936, only. The mortgage principal (except for operation of the moratorium) was due then. The first half 1936 real

estate taxes became due on April 1, 1936, and have not been paid. The holder of the consolidated first mortgage asserts a claim against the accounting trustee for the rents collected since default under the first mortgage as consolidated. The consolidation agreement prescribes default without prior demand if interest is unpaid for twenty days. Otherwise preliminary notice and demand are required under the terms of the extension agreement relating to defaults. The exact date upon which a default occurred in payment of interest or taxes is not shown but in view of the decision here reached the date is immaterial.

The question presented is whether or not the quoted terms of the consolidation and extension agreement operated upon default to vest in the first mortgagee without further action on his part title to the rents of the property and excluded any right therein of the record owner; or whether the extension agreement required further action by the mortgagee to reduce the rents to his ownership and to bar all right of the trustee therein.

The ordinary assignment clause in a mortgage gives no title to the rents even after default. (*Sullivan* v. *Rosson*, 223 N. Y. 217.) The cited case approved *Matter of Banner* (149 Fed. 936) and from the opinion in such case quoted with approval the statement " That a mortgagee out of possession can, upon the instant of a default in mortgage interest, become to all intents a landlord of the mortgaged building, seems to me something not to be encouraged." (Citing cases.) The same judicial reluctance to hold assignment clauses self operative was expressed in *148th Street Realty Co., Inc.*, v. *Conrad* (125 Misc. 142, 145) where LAZANSKY, J., said: "Assignments of rents which give the mortgagee control of premises are not looked upon with favor." While equitable considerations may compel the collector of rents under a subsequent lien to pay them over to a mortgagee superior in right (*Monica Realty Corp.* v. *122 Fifth Ave. Corp.*, 264 N. Y. 52), the rule of *Sullivan* v. *Rosson* (*supra*) is still the standard. Indeed, entry by a mortgagee to collect rent under an ordinary rent assignment is held to be a trespass if without the owner's consent and without court authorization; and damages for such a trespass are held not to be merely nominal if a substantial amount of rent was collected by the mortgagee (*Dime Savings Bank of Brooklyn* v. *Altman*, 246 App. Div. 823.)

The cases seem to recognize the possibility of a rent assignment which would operate automatically. While this contractual right theoretically is recognized the attention of the court has been called to no case in which any court has held that the clause then actually under consideration operated automatically. In every instance the essential nature of the mortgage and the incidental

rights attaching to it are emphasized, *i. e.*, *that the mortgage is security only*. From that premise it is argued in all the cases seen by the court that the holder of the security must take some step to put himself in possession of the property pledged. Here the draftsman of the extension agreement no doubt hoped that he had found a formula which would accomplish the automatic transfer of title to the rents. The court holds that the formula is not self-operating. (Compare *New York Life Ins. Co.* v. *Fulton Development Corp.*, 241 App. Div. 103; *Globe Indemnity Co.* v. *Park Lexington Corp.*, 154 Misc. 854, 859.)

Starting with the fact that the mortgage is security only and that the right to take rents under it is merely a phase of the same security and applying the repeated declarations of the courts that claims of such automatic transfers as that here asserted are not to be encouraged, it is possible to interpret this extension agreement so as to keep within its text and yet to deny it the effect which the claimant seeks.

So far as the extension agreement says that the rents due and to become due are assigned the text differs in no wise from the ordinary rent assignment clause which in *Sullivan* v. *Rosson* (*supra*) was held not to operate automatically. The succeeding phrase — " and the holder hereof shall have the right to collect said rents and profits without taking or demanding possession   *   *   *   and without   *   *   *   foreclosure and without   *   *   *   having any receiver appointed "— must be interpreted to give to the mortgagee the right — if the mortgagee chose to take it — of immediate action against the tenants in the mortgagee's own right. The phrase need be given no greater meaning. The assignment was still an assignment *as security*. If a tenant sued by the mortgagee for rent due defended on the score that the mortgagee had no right to the rents the agreement might suffice against such a defense. Under the extension agreement the mortgagee was required to take active steps to enforce his right to the rents. He need not take prior possession of the premises nor need he demand possession but he had at least the obligation to proceed to collect rents. Lacking such action by the mortgagee the record owner might still take the rents as his own. The mortgagee might feel content with his security and deem the collection of the rents unnecessary. Each month's failure to take active steps for collection of the rents constituted a waiver *pro tanto* of his security and of his right to rents for that month. The mortgagee could not by his own inaction charge the rents in the hands of the record owner with a trust in favor of the mortgagee. That is what this claimant argues for in effect. An owner whose mortgagee remained quiescent might find himself in

an impossible position if the interpretations contended for by claimant were to be accepted. If he collected rents and in good faith expended them for housekeeping charges in connection with the property he would still be liable for the full amount of the collection on the theory of the claimant. While claimant here asks only for an accounting and apparently is willing to allow deductions for taxes and other proper expenditures, his legal position is that he owns the rents. If that position is sound the amounts expended by an owner are not deductible as of right. If an owner failed to make collections because the rents belonged to the mortgagee he would in practical effect lose all benefit of the rents. The text of the extension agreement did not compel the collection of the rents by the mortgagee. Only upon actual collection would the direction in the agreement for credit on the mortgage debt become operative. So, the owner might find himself burdened with the full amount of the mortgage debt and have no offsetting receipt from the rents. The mortgagee here must be held to have waived his claim to rents for the entire period of his inaction.

Separate claim is made by the mortgagee for the amount of the taxes for the year 1936 imposed upon the mortgaged premises. This claim is a part of the claim for rents which has been passed on adversely to the claimant. However, the claimant endeavors to support the claim on a further theory of subrogation. Claimant asserts the obligation of the record owner to pay the taxes and claims a right to be subrogated to the city's status as a tax claimant. The taxes accrued during the period of trust administration. The argument is made by the claimant that the trustee had a trust obligation to pay the taxes so as to preserve the trust estate. The proof shows that there was no fault on the part of the trustee in his handling of the real estate. The collapse in realty values affected the premises so adversely as to make the value of the equity nil. In such circumstances there was no obligation arising out of a trust duty to make payment of the land taxes. There is no substance to the claim of subrogation to the city's position since the taxes have not in fact been paid. There is no proof before this court that the sale of the property in foreclosure will not produce enough to pay the taxes and the mortgage debt in full. While that result is unlikely the court cannot speculate on the subject. Accordingly the claim is wholly disallowed.

Persons interested in the trust estate as beneficiaries filed objections to the account. These objections were based in large part upon the alleged lack of care of the premises resulting in their deterioration and resulting loss of income. The court has taken full proof on the subject and finds as a fact that the accounting

trustee did with the property all that in the circumstances could reasonably have been done and that no basis exists for criticism of his management of the property. Accordingly all the objections are dismissed.

The court has considered the whole testimony and the affidavit of the accounting trustee for the purpose of determining the reasonable allowance to the trustee for legal services performed by him in connection with the trust estate. The court determines that the requested sums are reasonable and they are allowed as prayed for.

Submit, on notice, decree settling the account accordingly.