EMPIRE STATE COLLATERAL CO., a partnership, Plaintiff,

v.

BAY REALTY CORPORATION, Director of Internal Revenue, First District, State of New York, Neumann-Kahn Chevrolet Inc., People of the State of New York, United States of America, State Tax Commission, Goodyear Plastic Specialty Company, Inc. and "John Doe" doing business as King Chevrolet, person intended being the occupant of the garage space on the level below the street level of the building on the premises hereinafter described, and Michael Dalessio, Defendants.

No. 62-C-1002.

United States District Court
E. D. New York.
July 23, 1964.

Newman, Aronson & Neumann, New York City, for plaintiff; Mannis Neumann, New York City, of counsel.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for defendant United States; Michael J. Walsh, Asst. U. S. Atty., of counsel.

William M. Thomas, Long Island City, N. Y., for defendant King Chevrolet, Inc.

ZAVATT, Chief Judge.

This is an action to foreclose the liens of four consolidated mortgages on real property situated in Richmond County, New York (within the territorial jurisdiction of this court), which was removed to this court upon the petition of the defendant, United States of America (the Government), pursuant to 28 U.S.C. §§ 1444 and 2410. The Government is the owner and holder of a fifth mortgage which is subject and subordinate to the liens of the consolidated mortgages. The following motions are now before the court:

    1. Plaintiff's motion for an order directing the receiver to pay the New York City real estate taxes, water rates and sewer rents out of the rents collected by him;

    2. the Government's motion to modify the order of this court which appointed the receiver and authorized him, among other things, to pay real estate taxes, water rates and sewer rents by deleting therefrom the authorization of the receiver to pay these items;

    3. plaintiff's motion for an order confirming the report of the master to compute the amount due and owing on the consolidated mortgages and for judgment of foreclosure and sale.

For the reasons hereinafter stated, motion 1 is granted; motion 2 is denied; motion 3 is denied.

The four consolidated mortgages became liens prior to the Government's mortgage, as follows:

| | Principal Amount | Recorded | Rate of Interest |
|---|---|---|---|
| (1) | $50,000.00 | May 8, 1946 L 882 mp 379 | 4% |
| (2) | $ 6,000.00 | January 8, 1949 L 966 mp 453 | 4% |
| (3) | $10,000.00 | June 3, 1949 L 976 mp 182 | 4% |
| (4) | $25,000.00 | July 17, 1951 L 1045 mp 265 | 5% |

Mortgages 1, 2 and 3 were consolidated, by virtue of the terms of mortgage 3, so as to constitute "equal and co-ordinate liens * * * without priority of any one over the other, so that together they shall constitute in law but one first mortgage * * *." When mortgage 4 was executed and delivered on July 16, 1951,

it was not then consolidated with the prior mortgages but, rather, recited that it was "subject and subordinate to three prior mortgages now held and owned by Staten Island Savings Bank * * *." The plaintiff acquired mortgages 1, 2 and 3 by assignment dated March 23, 1961, recorded April 6, 1961, in Liber 1367 of mortgages at page 186 and acquired mortgage 4 by assignment dated March 10, 1961, recorded April 6, 1961, in Liber 1367 of mortgages at page 190.

Prior thereto, and on December 17, 1951, the then owner, the defendant Bay Realty Corporation, executed and delivered to the Government its note and mortgage in the sum of $170,000.00, dated December 17, 1951, recorded February 1, 1952, in Liber 1061 of mortgages at page 227. (Bay Realty Corporation was also the mortgagor in mortgages 2, 3 and 4 and is still the owner of the fee). This mortgage (designated herein as mortgage 5) recited that it was "Subject to any and all prior and existing mortgages, liens or other encumbrances of record affecting the aforedescribed premises." This mortgage does not secure an indebtedness of the defendant Bay Realty Corporation. Rather it was executed and delivered to secure the individual indebtedness of the defendant, Michael Dalessio, the sole stockholder of Bay Realty Corporation. Some time after mortgage 4 and before mortgage 5, the Government made assessments of deficiency income taxes against Michael Dalessio for the years 1945 through 1950 in the aggregate sum of $297,478.83, plus unassessed interest. It agreed to defer the enforcement of collection of these assessments upon the terms and conditions stated in an agreement between the Government, Michael Dalessio and others dated December 17, 1951, pursuant to which various assets of Michael Dalessio and other signatories thereto were assigned to the Government. By a separate agreement between the Government and Dalessio, dated December 17, 1951, Dalessio assigned all of the issued and outstanding stock of Bay Realty Corporation to the Government pursuant to the terms and conditions of the multiparty agreement of that same date. Mortgage 5 recites that the principal sum thereof is "to be paid pursuant to and in accordance with the terms of the collateral agreement" of December 17, 1961, executed by the Government, Dalessio and others. It bears no due date nor does it provide for the payment of interest. But, like mortgages 1, 2, 3 and 4, it does contain a clause that the mortgage shall become due, at the option of the Government, should the mortgagor default in the payment of any tax, water rate, sewer rent or assessment for 30 days after notice and demand. There is nothing in the record to indicate that the Government served any such notice and demand or exercised this option. The court has not been advised as to the value of the several assets that were assigned to the Government by Dalessio and others nor as to what disposition has been made of them. The court has been advised, however, that the amount of the unpaid deficiency assessments has been reduced to $127,939.96. For the purposes of the motions before the court, it will be assumed that mortgage 5 is a valid lien upon the premises and that it is due and payable.

After the "collateral agreement" and mortgage 5 had been executed and delivered and the latter recorded (and without the knowledge or consent of the Government), mortgages 1, 2, 3 and 4 were consolidated (by an agreement between the plaintiff and Bay Realty Corporation, dated March 24, 1961, recorded April 6, 1961, in Liber 1367 of mortgages at page 181) into one first mortgage securing the principal sum of $21,750.00 with interest. Whereas, by their terms, mortgages 1, 2, 3 bore interest at 4% and mortgage 4 bore interest at 5%, this consolidation agreement increased the rate of interest to 6% and extended the due date of the four mortgages as so consolidated to March 24, 1962.

Two additional modifications of mortgages 1, 2, 3 and 4, as consolidated, were made. The rate of interest was increased to 2% per month from the date when the

consolidated mortgage should become due by reason of any default under the terms of the mortgages as consolidated "whether any action or proceeding to recover the same or to enforce or foreclose this mortgage shall have been taken * * * and that the amount thereof shall be an additional lien upon the property covered by this mortgage and shall be secured by this mortgage." A counsel fee clause was added whereby the mortgagor agreed to pay a counsel fee of fifteen percent of the then unpaid balance of the mortgage debt and all disbursements incurred by the mortgagee, should the mortgagee retain counsel to collect any money due under the mortgage or to recover the mortgaged property, "and such counsel fees and all disbursements incurred by the mortgagee shall be added to the indebtedness secured by this mortgage and shall be and hereby are made part of the mortgage debt, and shall become an additional lien on said mortgaged property and payable on demand."

In and by this consolidation agreement, the plaintiff and Bay Realty Corporation ratified and confirmed the terms and conditions of the four mortgages except insofar as they conflict with the terms of the consolidation agreement, in which event the terms and conditions of the latter shall prevail.

The terms and conditions of the mortgages as to taxes, water rates, sewer rents, and the appointment of a receiver antedate mortgage 5 and are not inconsistent with the terms of the agreement consolidating mortgages 1, 2, 3 and 4. The mortgagor agreed that:

(a) If desired, the mortgagee could apply the monthly payments to the payment of taxes, water rates, fire and war risk insurance premiums;

(b) In an action to foreclose, the holder of the mortgage would be entitled to the appointment of a receiver of the rents and profits;

(c) The mortgagor would pay all taxes, assessments and water rates, and in default thereof, the mortgagee could pay the same;

(d) In the event of any default in the payment of principal or interest, "the rents and profits of said premises are hereby assigned to the holder of this mortgage as further security for the payment of said indebtedness."

(e) "upon and after any default in the terms of this mortgage or of its accompanying bond the mortgagee shall have the right forthwith without notice or demand and without the commencement of any action to foreclose this mortgage and, without the appointment of any Receiver, to enter upon and take possession of the said mortgaged premises and thereby become mortgagee in possession thereof or agent of the then owner of the mortgaged premises, with the right to let the said premises and receive all the rents, issues and profits thereof which are overdue, due or to become due, and to apply the same, after payment of all necessary charges and expenses, on account of the amount hereby secured; and in any of the events aforesaid, the mortgagor hereby unconditionally surrenders his possession and all the rents, issues and profits of said mortgaged premises to the mortgagee; and, under the circumstances aforesaid, the mortgagor for himself and any subsequent owner of said premises, hereby agrees to pay to the mortgagee in advance a reasonable rent for the premises occupied by him and in default of so doing, hereby agrees that he may be dispossessed by the usual summary proceedings, and further that any tenant defaulting in the payment to the mortgagee of any rent may be likewise dispossessed by the mortgagee as mortgagee in possession of said mortgaged premises, or as agent of the then owner of aforesaid premises."

The Government's mortgage does not contain clauses similar to clauses (a) and

(d) but does contain clauses similar to (b), (c) and (e).

The receiver, Ronald Wohl, was appointed, upon the application of the plaintiff, by an order of this court dated October 29, 1962, which directed him to collect and receive rents from the tenants in possession; authorized him to rent the premises, to keep them in repair and insured against loss or damage by fire and to pay taxes, assessments and water rates. It was further ordered "that said Receiver after paying the expenses of the management and care of said premises as above provided, retain the balance of the moneys which may come into his hands until the further order of this Court." When the receiver resigned and the present receiver, Robert I. Silverberg, was appointed successor receiver, the order of appointment, dated July 19, 1963, vested him with the powers and duties of the original receiver specified in the order of October 29, 1962.

Neither the original nor the successor receiver has paid any taxes, water rates or sewer rents with the possible exception of the 1963/64 taxes. The original receiver has advised the court that he did not pay any such items at the request of someone in the office of the United States Attorney. The present receiver has not paid any of these items because of his correspondence with the United States Attorney's office. In a letter dated October 11, 1963, he advised the United States Attorney's office that there were arrears of taxes in excess of $9,500.00, plus interest; that he intended to pay them but that "in view of the amount of tax arrears and the limited scope of the Order of appointment, I intend to move the court for further instructions." He requested the office of the United States Attorney to send him a letter stating that it had no objection to his paying all or part of the tax arrears. The reply, dated November 18, 1963, stated:

"Please be advised that the undersigned as attorney for the government in this action is without authorization to provide you with the type of letter requested. The nature of the proceeding, in that it involves a claim for taxes, the total amount of which might possibly exceed the value of the property, could probably result in presenting a question as to priority, and therefore a letter consenting to the payment of any taxes might be considered a waiver of the government's rights.

"Once the position of the government has been determined by the courts or otherwise in regard to the property involved, we are sure that there will be no objection to the payment of those taxes entitled thereto."

Neither the receiver nor the Government applied to the court for instructions. The issue as to the payment of taxes, water rates and sewer rents is now before this court for the first time in this proceeding.

The unpaid New York City real estate taxes, which accrued subsequent to the date of the recording of the Government's mortgage, aggregate $10,956.28. They cover the tax years 1960/61, second half; 1961/62; 1962/63. It should be noted that the 1963/64 taxes, which became due after the appointment of a receiver in this proceeding, appear to have been paid. But the papers before the court do not reveal by whom the payment of this tax item was made.

The unpaid water rates and sewer rents cover the period May 20, 1961 to May 20, 1964. With interest to July 31, 1964, the amount of these water rates aggregate $781.99 and the amount of the sewer rents aggregate $260.65. Thus the unpaid New York City real estate taxes, water rates and sewer rents, with interest to July 31, 1964, total $11,998.92.

The Government was made a party defendant because it is a junior mortgagee. It did not file a notice of appearance. Rather it served and filed its answer to the amended complaint wherein it claimed an interest in the mortgaged premises by reason of its mortgage. This answer was withdrawn, however, on February

10, 1964. The Government contends that, when it withdrew its answer, it did so upon the express understanding between the attorney for the Government and the attorney for the plaintiff that the Government was reserving its right to object to the payment of any taxes, water rates or sewer rents, to the 15% counsel fee and the 2% per month penalty interest. There is no stipulation on file recording any such understanding. Thus, the Government is in the position of one who has filed neither a notice of appearance nor an answer. Nevertheless, the court will assume, for the purposes of these motions, that it has standing to oppose the motions of the plaintiff and to make its motion.

By an order of this court dated March 4, 1964, Joan Marie Durante was appointed master to compute the amount due to the plaintiff and to report. She has filed her report, dated March 31, 1964, in which she has made her computation as follows:

"Balance of principal sum of bonds and mortgages as consolidated remaining unpaid ......................... $18,157.26

Interest thereon at the rate of 2 per cent per month from March 26, 1962 to March 31, 1964 (24 months and 7 days)    8,814.19

Total ......................................... $26,971.45

Attorneys' fees for collection at the rate of 15 per cent as provided in the Consolidation Agreement ............ $ 4,045.66

Total amount due plaintiff .......................... $31,017.11"

She has calculated interest under the 2% per month penalty clause of the agreement consolidating mortgages 1, 2, 3 and 4 and has also included in the amount due to the plaintiff a counsel fee equal to 15% of the computed interest and principal due.

Neither the plaintiff's nor the Government's mortgages transferred the rents automatically. A clause in a mortgage assigning the rents of the mortgaged premises as security, in the event of a default, is not per se a transfer of the rents to the mortgagee. Such a clause operates merely as a pledge of the rents to which the pledgee does not become entitled until he asserts his right and in some legal form endeavors to reduce the pledge to possession. Sullivan v. Rosson, 223 N.Y. 217, 119 N.E. 405, 4 A.L.R. 1400 (1918). The mortgagee must take affirmative action. Either he must enter into possession and actually collect the rents or must apply for and obtain an order appointing a receiver to collect the rents in his behalf. Matter of Kidd's Estate, 161 Misc. 631, 292 N.Y.S. 888 (1936); New York Life Ins. Co. v. Fulton Dev. Corp., 241 App.Div. 103, 271 N.Y.S. 563 (1st Dep't), rev'd on other grounds, 265 N.Y. 348, 193 N.E. 169 (1934); Empire Trust Co. v. Kermacoe Realty Co., 149 Misc. 66, 68, 266 N.Y.S. 685, 686 (1933); Rhinelander v. Richards, 184 App.Div. 67, 171 N.Y.S. 436 (1st Dep't 1918), aff'd, 189 App.Div. 931, 178 N.Y.S. 915 (1919). It is only when a clause in a mortgage constitutes an absolute and unqualified assignment of rents, to operate *in praesenti*, and is clearly intended as such by the parties, that an assignment of rents clause operates as such, without more. See Harris v. Taylor, 35 App.Div. 462, 54 N.Y.S. 864 (1st Dep't 1898), appeal dismissed, 159 N.Y. 533, 53 N.E. 1126 (1899). Since plaintiff's consolidated mortgage contained a conditional assignment of rents, i. e., only in the event of default, the plaintiff was required to take affirmative action before he could acquire any interest in the rents. The plaintiff did

not enter into possession under that clause of the consolidated mortgages giving it that right. Rather, it applied for the appointment of a receiver in its foreclosure proceeding.

■ When, as in the instant case, the receiver was appointed upon plaintiff's application, that appointment operated to create a specific lien upon the rents, Abrahams v. Berkowitz, 146 App.Div. 563, 131 N.Y.S. 257 (2d Dep't 1911), for the sole benefit of the plaintiff. New York Life Ins. Co. v. Fulton Dev. Corp., supra; Collins v. Wallens, 143 Misc. 329, 256 N.Y.S. 453 (1932); Sullivan v. Rosson, supra; Abrahams v. Berkowitz, supra; Madison Trust Co. v. Axt, 146 App.Div. 121, 130 N.Y.S. 371 (1st Dep't 1911); 4 Clark, Receivers § 958(b) at 1729 (3d ed. 1959).

The Government contends that its rights are governed by the principle established by the Supreme Court in United States v. New Britain, 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954) and reaffirmed in United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963). That principle is that federal tax liens are superior to subsequent local tax liens despite the fact that, under state law, local tax liens have priority over earlier liens. In Buffalo Savings Bank the question involved was the distribution of the proceeds of sale of real property in a mortgage foreclosure proceeding instituted by the Buffalo Savings Bank. The state court had held that real estate taxes which became liens subsequent to the Government's federal tax lien should be paid out of the proceeds of sale as part of the expenses of the sale, prior to the payment of the Government's lien. The Supreme Court reversed, holding that "federal tax liens have priority over subsequently accruing liens for local real estate taxes, even though the burden of the local taxes in the event of a shortage would fall upon the mortgagee whose claim under state law is subordinate to local tax liens" and that "the state may not avoid the priority rules of the federal tax lien by the formalistic device of characterizing subsequently accruing local liens as expenses of sale." 371 U.S. at 229, 83 S.Ct. at 315. Although New Britain and Buffalo Savings Bank involved federal tax liens, not federal real estate mortgages, the principle of those cases has been considered applicable to instances where the Government's lien is one other than a tax lien. W. T. Jones and Co. v. Foodco Realty, Inc., 318 F.2d 881, 889 n. 19 (4th Cir. 1963), recognizing that a first deed of trust would be given priority under federal common law over a mechanic's lien which, under state law, had priority over prior deeds of trust; United States v. County of Iowa, 295 F.2d 257 (7th Cir. 1961), where a first mortgage was given priority over subsequent liens for local taxes, despite a state law which gave such taxes priority over earlier mortgage liens; United States v. Roessling, 280 F.2d 933 (5th Cir. 1960), to same effect as County of Iowa, supra; Southwest Engine Co. v. United States, 275 F.2d 106 (10th Cir. 1960), to same effect as W. T. Jones, supra; United States v. Ringwood Iron Mines, Inc., 251 F.2d 145 (3d Cir. 1957), cert. denied, 356 U.S. 974, 78 S.Ct. 1138, 2 L.Ed.2d 1148 (1958), to same effect as County of Iowa, supra; United States v. Latrobe Constr. Co., 246 F.2d 357 (8th Cir.), cert. denied, 355 U.S. 890, 78 S.Ct. 262, 2 L.Ed.2d 189 (1957), to same effect as W. T. Jones, supra. See also, United States v. Christensen, 218 F.Supp. 722, 729 (D.Mont.1963). In all of these cases, the Government's first mortgages were being foreclosed. The question was whether subsequent tax liens were to be paid out of the proceeds of the sale of the mortgaged premises, on which the Government had mortgage liens antedating subsequently accruing liens. None of these cases involved the disposition of rents collected by a receiver appointed in an action to foreclose a mortgage where the Government held an inferior mortgage lien which, by its very terms was subject and subordinate thereto.

Nevertheless, the Government contends that the principle of New Britain and

Buffalo Savings applies and argues as follows: true, its mortgage lien is inferior to that of the plaintiff's but is superior to the subsequent real estate tax, water rate and sewer rent liens of the City. Although the plaintiff's mortgage lien is inferior to these items and the Government's mortgage lien, in turn, is inferior to that of the plaintiff, the receiver may not pay these local municipal liens out of the rents, because to do so would impair the Government's lien upon the mortgaged premises. Specifically, the Government claims (1) that the rents in the hands of the receiver may not be used to pay the local taxes since they became liens subsequent to the lien of the Government's fifth mortgage; (2) that the property may not be sold subject to these taxes; (3) that the judgment of foreclosure and sale should include the formula followed in the judgment of foreclosure and sale in Buffalo Savings as reported in 13 A.D.2d 207, 215 N.Y.S.2d 189 (4th Dep't 1961). As applied to the instant case this formula would provide for the distribution of the proceeds of sale in the following order of priority: (a) all expenses of the sale, except the taxes, water rates and sewer rents; (b) that there then be created a "priority adjustment fund" equal to the amount due to the plaintiff upon its consolidated mortgages, to be held in suspense; (c) payment of the amount due to the Government under its mortgage to the extent that the proceeds are sufficient to pay the same; (d) payment of the amount due to the City for taxes, water rates and sewer rents. If the proceeds are insufficient to pay all or any portion of said local taxes, water rates and sewer rents, the deficiency shall be paid out of the "priority adjustment fund" before any part thereof is paid to the plaintiff. Under this proposed formula the fifth mortgagee would be entitled to payment of its mortgage to the extent that funds are available for that purpose, before the plaintiff could receive any share of the proceeds of sale.

■■ Where a federal property interest is involved, the relative priority of that interest over other interests is to be determined by federal rather than state law, Aquilino v. United States, 363 U.S. 509, 514, 80 S.Ct. 1277, 1280–1281, 4 L.Ed.2d 1365 (1960). That federal law is that first in time is first in right. United States v. New Britain, supra. Nevertheless, before this principle can be invoked it is necessary to first determine what, if any, property interest the Government has. Aquilino v. United States, supra. Although the Government in this case has a lien upon the mortgaged premises, it has no lien upon the rents. That specific lien arose only by virtue of the appointment of the receiver upon the application of and for the benefit of the plaintiff. Neither does the City of New York have a lien upon the rents in the hands of the receiver. Both the Government and the City have liens upon the mortgaged premises. The Government's lien is contractual. The City's lien is statutory. The principle of New Britain and Buffalo Savings Bank might come into play as between the mortgage lien of the Government and the tax lien of the City, if we had here a question as to how the proceeds of a sale in a foreclosure action should be distributed, for those proceeds take the place of the mortgaged premises and those having had liens upon the property acquire, in lieu thereof, equitable liens upon the proceeds. See Paragon Progressive Fed. Credit Union v. Byndloss, 212 N.Y.S. 2d 989, 991 (1961); Fed. Land Bank of Springfield v. Weaver, 114 N.Y.S. 2d 592, 594–595 (1952), rev'd on other grounds sub nom., Fed. Land Bank of Springfield v. Tobias, 283 App.Div. 1134, 131 N.Y.S.2d 599 (3rd Dep't 1954); Witas v. Carlson, 201 Misc. 201, 203, 110 N.Y.S.2d 659, 662 (1952); Kittle v. Gordon, 146 Misc. 726, 731, 263 N.Y.S. 647, 652 (1933); Lobbett v. Galpin, 228 App.Div. 65, 68, 239 N.Y.S. 76, 80 (4th Dep't 1930).

■■ The Government's contentions conflict with the very terms of its mortgage. That mortgage is subject and subordinate to the plaintiff's mortgages as consolidated (except as hereinafter

provided) not only as a matter of law but also by its express provisions. The Government's rights are subordinate to those of the plaintiff. The prior rights of the plaintiff include the right to the rents and profits of the mortgaged premises upon default of the owner and the appointment of a receiver for his benefit upon his application to the court. This is no incidental or insubstantial right—it goes to the very essence of plaintiff's mortgage. The Government was cognizant of these rights when it accepted its fifth mortgage "subject to any and all prior and existing mortgages." The Government's interest in the mortgaged premises being contractual rather than statutory, must be ascertained solely by resort to the instrument from which its rights flow; like any other contracting party, it is to be afforded no greater rights than those for which it has contracted. Its mortgage, being subject and subordinate to the rights of the plaintiff under its prior mortgages, is not inferior to some and superior to other rights of the plaintiff. One of those rights is found in that clause of plaintiff's mortgages entitling the plaintiff to take possession, in the event of any default; to receive the rents; to pay all necessary charges and expenses and then apply the rents on account of the amount secured by the mortgage. The appointment of a receiver in a foreclosure proceeding is a substitute for taking possession. New York Life Ins. Co. v. Fulton Dev. Corp., supra.

The Government's motion to delete from the order appointing the receiver and from the order appointing the substituted receiver authorization to pay local taxes, water rates and sewer rents is denied. The plaintiff's motion for an order directing the substitute receiver to pay said taxes, water rates and sewer rents is granted to the extent that the receiver be so directed upon condition that he first reserve out of rents now in his possession and rents hereafter received a sum sufficient to pay carrying charges including reasonably anticipated repairs.

The plaintiff's motion to confirm the master's report and for judgment of foreclosure and sale is denied and the matter of the computation of the amount due to the plaintiff remanded to the master to hear and report as to whether the 15% counsel fee clause and the 2% per month penalty interest clause of the consolidation agreement, or either of them, impair the security of the Government's mortgage. After the incoming of said report, the court will determine whether these clauses of the consolidation agreement are valid as to the Government. See Barbano v. Central-Hudson Steamboat Co., 47 F.2d 160 (2d Cir. 1931); Remodeling & Construction Corp. v. Melker, 65 N.Y.S.2d 738, aff'd, 270 App.Div. 1053, 64 N.Y.S.2d 175 (2d Dep't 1946). Cf. Kossoff v. Wald, 241 App.Div. 483, 272 N.Y.S. 787 (1st Dep't 1934). The master is further directed to take testimony as to and to recompute the amount due to the plaintiff for principal. In so doing the master shall require the plaintiff to prove and shall report to the court how the payments made on account of the consolidated mortgages subsequent to March 24, 1961, were allocated by the plaintiff as between principal and interest; the unpaid balance of principal on which interest was computed for each such allocation; at what rate the interest was computed for each such allocation.

Settle an order consistent herewith on or before ten (10) days from the date hereof.