GLOBE INDEMNITY COMPANY, Plaintiff, *v.* PARK-LEXINGTON CORPORATION and Others, Defendants.

Supreme Court, New York County, January 21, 1935.

*David Harrison,* for the Globe Indemnity Company.

*Lewis & Kelsey* [*Arthur J. Marangelo* of counsel], for the Park-Lexington Corporation.

*McNamara & Seymour* [*Charles Green Smith* of counsel], for the Empire Trust Company.

*Cadwalader, Wickersham & Taft* [*Edward A. Niles* of counsel], for the committee.

*Lewis & Kelsey,* for William A. White & Sons.

*McManus, Ernst & Ernst* [*Hugo Epstein* of counsel], for Walter A. Lynch, receiver in supplementary proceedings of Park-Lexington Corporation.

McGEEHAN, J.   Plaintiff seeks to have an agreement made on December 29, 1931, between the defendant Park-Lexington Corporation, a stock corporation of New York, and Karl H. Behr, W. B. Baldwin, William Alexander Campbell, Peter Grimm, Arthur S. Meyer and Thomas F. Troxell, as a committee, and William A. White & Sons set aside and declared fraudulent and void and a nullity as to the plaintiff and for further relief in the premises.

The salient facts of the case are that on November 1, 1930, judgment was entered against the defendant Park-Lexington Corporation in the Supreme Court of New York county in the sum of $123,261.91 in favor of one Antonio Melian Pavia (*Pavia* v. *Park-Lexington Corporation,* 138 Misc. 600).   In order to effect an appeal in this case to the appellate courts and to stay execution of judgment, the Park-Lexington Corporation applied to the plaintiff herein to post a bond guaranteeing the payment of the judgment to the

said Pavia, which the plaintiff did for the Park-Lexington Corporation. Thereafter on October 23, 1931, the Appellate Division affirmed the judgment rendered in favor of Pavia (234 App. Div. 668). The Park-Lexington Corporation thereafter made every effort to appeal the case to the Court of Appeals, but failed in its attempt when on January 12, 1932, the Court of Appeals denied the Park-Lexington Corporation the right of a further appeal to that court.

Thereupon the plaintiff in that action, Pavia, demanded from the Park-Lexington Corporation payment of his judgment and the Park-Lexington Corporation not paying the same, the said Pavia demanded payment of said judgment from the plaintiff herein pursuant to its undertaking. The plaintiff thereupon in January, 1932, did pay the said judgment in the sum of $132,456.03 to the said Pavia and received therefor an assignment of the aforesaid judgment against the defendant Park-Lexington Corporation.

When the plaintiff herein then sought to collect from the defendant Park-Lexington Corporation the aforesaid judgment it discovered that there were insufficient assets to pay his claim and that one month before it paid the judgment to Pavia, and while the *Pavia* case was pending in the Court of Appeals awaiting disposition as to the right to further appeal that case to that court, an agreement dated December 29, 1931, was entered into between the parties above referred to, and which agreement is marked in evidence. By this agreement the parties, contemplating a default in the terms of a first mortgage on the premises involved, agreed that, among other things, William A. White & Sons should take over and manage the premises involved under an irrevocable agency as far as the Park-Lexington Corporation was concerned. This agreement was effected as an outgrowth and a result of a mortgage executed by the Park-Lexington Corporation to Empire Trust Company, as trustee, dated July 1, 1923, to secure an issue of first mortgage leasehold six and one-half per cent sinking fund gold bonds and another mortgage dated June 12, 1923, to Anahma Realty Corporation, both mortgages on December 29, 1931, being outstanding and unpaid. The Park-Lexington Corporation on December 29, 1931, not having paid the land tax for the year 1931, which might be construed as a breach of the lease and the mortgage, and not having sufficient funds to pay the interest due on the bonds, issued under said first mortgage and due and payable on January 1, 1932, as well as an installment of the sinking fund, provided for in the mortgage and being imminently insolvent, entered into the agreement now before this court whereby it was stated that in order to avoid the appointment of a receiver of the rents for the mortgaged premises, it was agreed

that the Park-Lexington Corporation would appoint William A. White as agent under restrictions contained in said agreement. Coincidentally with the agreement the Park-Lexington Corporation transferred some $35,201.58 in cash to the agent which cash was on hand at the time. The agent under the agreement, after paying the ordinary operating expenses, was to turn over the balance of the rents collected to the Empire Trust Company, to be held or disposed of " as provided in the first mortgage, and to pay over any balance of such funds remaining after all sums due or to become due under the first mortgage have been paid to Anahma Realty Corporation or its assignee as holder of the second mortgage."

Under paragraph 4 the committee merely consented but assumed no liability by virtue of the agreement. The committee could terminate said agreement by notice to the Park-Lexington Corporation and to the agent. The agent likewise by giving notice to the Park-Lexington Corporation and the secretary of the committee could terminate said agreement. But as far as the Park-Lexington Corporation was concerned it had no right to terminate said agreement.

The plaintiff, unable to fully satisfy his claim other than some $26,000, which was realized through additional collateral posted by a third party (Conde Nast), at the time of the furnishing of the bond by the plaintiff to the Park-Lexington Corporation, proceeded to examine the Park-Lexington Corporation in supplementary proceedings, as well as William A. White & Sons and Empire Trust Company, in an endeavor to locate assets from which to be reimbursed for its loss.

On November 27, 1934, Walter A. Lynch, the coplaintiff, was appointed receiver in supplementary proceedings of the assets of the Park-Lexington Corporation.

On December 29, 1931, the Park-Lexington Corporation was imminently insolvent because that was the reason for the agreement of December 29, 1931. On that date the judgment against the Park-Lexington Corporation in favor of Pavia was in existence, even though the application to appeal from said judgment and its affirmance in the Appellate Division was pending in the Court of Appeals. After the judgment had been affirmed in the Appellate Division and leave to further appeal had been denied, the judgment of Pavia was effective " as if the appeal therefrom had not been taken." (Civ. Prac. Act, § 497; *Stevens* v. *Stevens*, 69 Hun, 332.) Hence, Pavia's judgment against the Park-Lexington Corporation was effective as of November 1, 1930. By paying this judgment to Pavia on January 22, 1932, the Globe Indemnity Company became subrogated to all the rights of Pavia, and thus the Globe Indemnity Company became a judgment creditor of the Park-Lexington Cor-

poration as of November 1, 1930, which judgment was in existence and unpaid on December 29, 1931. (*Mathews* v. *Aikin*, 1 N. Y. 595; *Morehouse* v. *Brooklyn Heights R. R. Co.*, 185 id. 520, at p. 525, citations.) Had no appeal been taken in the *Pavia* case and had not the plaintiff put up the bond on the appeal, the bondholders would have been the ultimate sufferers from the judgment entered against the Park-Lexington Corporation. Now the question before the court is: Have the bondholders benefited by the fact that the plaintiff actually paid the judgment for the Park-Lexington Corporation?

The plaintiff contends that the assignment of rents of December 29, 1931, and the transfer of the $35,201.58 involved be declared void.

The application for relief is sought under several theories.

The first is that under section 273 of the Debtor and Creditor Law, it is entitled to the relief sought. Under that section the proof adduced does not establish that the assignment and transfer of December 29, 1931, was not for a "fair consideration," and the plaintiff cannot prevail on that theory.

The second theory advanced is that under section 276 of the Debtor and Creditor Law it is entitled to the relief sought. Here, too, the court finds that the evidence adduced does not establish the fact that the agreement of December 29, 1931, was made with the " intent to defraud " as required under that section of the law.

The third theory advanced is that under section 15 of the Stock Corporation Law the assignment and transfer of December 29, 1931, was void because it was made while the Park-Lexington Corporation was imminently insolvent, and with an intent of giving a preference to a particular class of creditors over other creditors of the corporation.

Under this section of the Stock Corporation Law the plaintiff is not obliged to prove a fraudulent intent as required under section 276 of the Debtor and Creditor Law. Furthermore, under section 15 of the Stock Corporation Law the plaintiff need not prove that the consideration for the assignment or transfer was unfair as required under section 273 of the Debtor and Creditor Law. (*Georgiades* v. *Sunset Fruit Products Corp.*, 237 App. Div. 357.)

Even if the Park-Lexington Corporation had no intent to profit by the transaction and acted for the benefit of the bondholders on the mortgage, this would not constitute a defense if the transfer were done with an intent to effect a preference for the bondholders over other creditors of the Park-Lexington Corporation. (*Georgiades* v. *Sunset Fruit Products Corp.*, supra.)

If in legal effect the agreement of December 29, 1931, did operate to put the mortgagee in possession under the assignment of rents in the original mortgage of 1923, then the first point to be decided

under section 15 of the Stock Corporation Law is, was there an assignment or transfer of any other property or did the assignee merely obtain that which it was legally entitled to under its original mortgage of 1923, by the agreement, transfer and assignment of December 29, 1931. (*Doehler* v. *Real Estate Board of New York Building Co., Inc.,* 150 Misc. 733.)

Certainly, the agreement of December 29, 1931, contained provisions foreign to the terms of the original mortgage. The mere assignment of the rents provided for in the mortgage of 1923 did not *ipso facto* effect an assignment of the actual rents without the mortgagee asserting this right and endeavoring to reduce this pledge to possession. (*Sullivan* v. *Rosson,* 223 N. Y. 217, 226; *Empire Trust Co.* v. *Kermacoe Realty Co., Inc.,* 149 Misc. 66.)

Where contemporaneous with the mortgage an assignment of rents is given to the mortgagee who immediately proceeds to collect the rents under that assignment, then the mortgagee is not obliged to do anything further and as such assignee of rents he takes precedence over a receiver subsequently appointed. (*Harris* v. *Taylor,* 35 App. Div. 462.)

The law recognizes a difference between an assignment of rents *in præsenti* and an assignment of rents *in futuro*. An assignment of rents *in futuro*, that is, an assignment of rents in which the assignee does not actually proceed to collect the rents immediately upon the execution of the mortgage and the assignment but reserves the right to collect the rents under certain conditions or at a future time, then he must endeavor to reduce this pledge of the rents to possession. The right to collect rents belongs to the owner as an incident to his ownership of the land or leasehold. (*New York Life Ins. Co.* v. *Fulton Development Corp.,* 265 N. Y. 348.) Hence the mortgagee was attempting to obtain the rents *not under the mortgage,* because that would involve the intervention of a receiver, *but by the agreement* which was to be considered by the parties concerned as a substitute for the receiver. (*Harris* v. *Taylor,* 35 App. Div. 462.) Under the agreement of December 29, 1931, the mortgagee was endeavoring to assert its rights to the rents and to reduce the pledge of the rents contained in the original mortgage of 1923 to actual possession by another method in lieu of the appointment of a receiver. (*New York Life Ins. Co.* v. *Fulton Development Corp., supra.*) Under that agreement some $35,201.58 was likewise transferred to the " agent " for the benefit of the mortgagee.

If, instead of the agreement of December 29, 1931, the mortgagee instituted a foreclosure suit and procured the appointment of a receiver, it would be confined to the rents accruing and paid during the pendency of the suit. (*Argall* v. *Pitts,* 78 N. Y. 239, 242.)

The earnings and the rents and cash on hand of the Park-Lexington Corporation prior to the appointment of said receiver would belong to the general creditors even as against the bondholders. (*New York Security & Trust Co.* v. *Saratoga Gas & Electric Light Co.*, 159 N. Y. 137.)

The lien of a mortgagee dates only from the appointment of the receiver, and his right to collect rents extends only to such as are unpaid at the time of his appointment. (*Wyckoff* v. *Scofield*, 98 N. Y. 475, at p. 478.)

A mortgagee out of possession has no lien upon the rents. Until he elects to take possession or moves for a receiver the rents belong to the lessor. (*Frank* v. *New York, Lake Erie & Western R. R. Co.*, 122 N. Y. 197, 221; *Sullivan* v. *Rosson, supra; Wyckoff* v. *Scofield, supra.*)

The rents already collected and in possession of the owner could not by order of the court be paid over to the mortgagee. (*Argall* v. *Pitts, supra.*)

However, this was accomplished by the agreement of December 29, 1931, so that the mortgagee did receive additional benefits from the agreement of December 29, 1931, which were not contemplated in the mortgage of 1923, namely, the *dispensing with a receiver* and the incidental expenses attached thereto, and a transfer of cash on hand on December 29, 1931, some $35,000, to which the mortgagee as such had no right to the exclusion of other creditors.

The fact that on December 29, 1931, the Park-Lexington Corporation was imminently insolvent is clearly established. The agreement and assignment of December 29, 1931, was effected for the benefit of the bondholders of the mortgage and was executed to protect them. This was the very purpose of the agreement. To accomplish this end practically all the assets of the Park-Lexington Corporation which were in the eyes of the law a trust fund for the payment of its debts, whether secured or unsecured (*Bartlett* v. *Drew*, 57 N. Y. 587), were being given to some creditors at the expense of others. In fact, not only was the agreement and the assignment of December 29, 1931, unintended to aid the plaintiff, but it actually deprived it of such assets that it might have levied on in satisfaction of its claim. It is a cardinal principle of law that a man intends the natural and probable consequences of his acts and where an act is done so obviously to protect some creditors at the expense of others, it is apparent that the conveyance and transfer was done to effect a preference.

The entire agreement of December 29, 1931, when carefully analyzed shows a studied attempt to work out a plan whereby for some purposes it might be contended that the mortgagor is still in possession and for others the mortgagee was put into possession.

These two stands are inconsistent. The agreement does not specifically state that the purpose of the agreement of December 29, 1931, is to put the mortgagee in possession, but it is urged that in effect the agreement of December 29, 1931, accomplished that result. If that result was accomplished and that was the intention of the parties, then it must have been the intention of the parties to give the creditors under the mortgage the benefit of the $35,000 on hand at the time and to which the creditors under the mortgage were not entitled at the expense of the general creditors at the time.

If, on the other hand, the agreement contemplated the mortgagor remaining in possession by the agreement of December 29, 1931, then the agreement of December 29, 1931, certainly contemplated the creditors under the mortgages being preferred over the general creditors at the time and the assignment and transfer were void on that ground.

After the agreement of December 29, 1931, the plaintiff, who by its act of putting up the bond for the Park-Lexington Corporation prevented immediate execution upon the assets of the Park-Lexington Corporation with the ultimate loss being borne by the bond-holders and making it possible for the Park-Lexington Corporation to continue in business for a considerable time thereafter while the appeal was pending, now finds itself in the position of the creditor so aptly described by WERNER, J., in *Hurd* v. *New York & C. Steam Laundry Co.* (167 N. Y. 89, at p. 95): " When he demands payment of his claim he is referred to the empty shell which is all that is left of the live corporation whose tangible assets constituted a trust fund for the payment of his debt at the time of its creation." (*Georgiades* v. *Sunset Fruit Products Corp., supra.*)

Therefore, the court finds that from the evidence adduced the Park-Lexington Corporation showed an intent to effect a preference among creditors of the corporation while imminently insolvent by the assignment and transfer of December 29, 1931, executed between the Park-Lexington Corporation, a New York corporation, and Karl H. Behr, W. B. Baldwin, William Alexander Campbell, Peter Grimm, Arthur S. Meyer and Thomas F. Troxell, as a committee, and William A. White & Sons, a New York corporation, and declares same void as between the parties to this action regardless of how the money was ultimately spent by the transferee.