**IVOR B. CLARK CO., Inc., Plaintiff,**

v.

**Moreland H. HOGAN, International Office Park, Inc., and International Park Corporation, Defendants.**

**IVOR B. CLARK CO., Inc., Petitioner,**

v.

**Moreland H. HOGAN, International Park Corporation and James Talcott, Inc., Respondents.**

No. 66 Civ. 3003.

United States District Court
S. D. New York.

Oct. 23, 1968.

On Reargument Nov. 14, 1968.

Tanner & Friedman, New York City, for petitioner.

White & Case, New York City, for third-party James Talcott, Inc., David Hartfield, Jr., Daniel Murphy, II, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Petitioner, Ivor B. Clark, Inc. (hereinafter referred to as "Clark") moves this Court, pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and CPLR §§ 5225(b), 5251, for an order adjudging respondents Moreland H. Hogan (hereinafter referred to as "Hogan"), International Park Corporation, of which Hogan is the President, (hereinafter referred to as "International") and James Talcott, Inc., third party in interest herein (hereinafter referred to as "Talcott") guilty of contempt of this Court for having violated the terms of certain restraining notices and requiring Talcott to deliver to petitioner, the judgment creditor in this action, certain monies received by Talcott from Hogan and International, the judgment debtors, to be applied in partial satisfaction of petitioner's judgment, said monies representing rents received by Hogan and International from certain of its lessees.

Talcott cross-moves, pursuant to Fed. R.Civ.P. 69(a) and CPLR § 5240, for an order vacating the restraining notices served upon Delta Airlines, Inc. (hereinafter referred to as "Delta") and the Ford Motor Co. (hereinafter referred to as "Ford") insofar as they affect the rents owed by Delta and Ford under certain lease agreements with the judgment debtor on the ground that the right to the restrained rent monies had been

assigned to Talcott prior to the entry of the judgment herein, and for damages.

Briefly, the facts indicate that on December 1, 1965, Talcott lent to International the sum of $2,300,000.00 to be used for the development of certain real property. The loan agreement consisted of the following relevant documents: (1) a promissory note signed by Hogan on behalf of International providing that the principal amount of the note together with the interest accrued thereon would be due and payable on December 1, 1966; (2) a Deed to Secure Debt (hereinafter referred to as "the Deed") granting Talcott an assignment of the leases on the underlying property (including the leases of Delta and Ford) as additional security for the indebtedness; and (3) an Assignment of Rents and Leases (hereinafter referred to as "the Assignment") to further secure the payment of the note. The Delta and Ford leases were specifically included in the Assignment. However, under the terms thereof, International was permitted, pursuant to a license provision, to collect and receive the rents assigned, and to:

"* * * apply same, first to the payment of taxes upon said premises before penalty or interest are due thereon, secondly to the cost of such insurance and of such maintenance and repairs as is required by the terms of said Deed to Secure Debt, and thirdly to the satisfaction of all obligations under the said leases, and fourthly to the payment of interest and principal becoming due on the said Note and Deed to Secure Debt before using any part of the same for any other purpose." (Conviser Affid. of June 28, 1968, Exh. C at 5.)

This Assignment was filed with the Clerk of the Superior Court, Fulton County, Georgia, and recorded on December 7, 1965.

On June 13, 1966, Talcott subordinated its security interest in the properties of International, by an agreement executed and recorded on that date, to the interest of the Mutual Life Insurance Company of New York (hereinafter referred to as "MONY"), which company had, at that time, lent to International the sum of $2,165,000.00.

On December 1, 1966, Talcott executed a further agreement with International extending the term of its note for one year and increasing the interest thereunder. This instrument was recorded in the Fulton County Court on December 22, 1966.

In December 1967, International defaulted on both its loan agreements, in response to which and on January 26, 1968, it was agreed between International and Talcott at a meeting held in MONY's New York office, that Talcott, as subordinate creditor to MONY and by virtue of a power of attorney given to it by International (see Conviser Affid. of June 28, 1968, Exh. H), would take over the collection of the rents, pay the necessary expenses, make the scheduled payments on the MONY note, and, finally, apply the balance to the principal and accrued interest owed on the Talcott note.

By letters dated January 30, 1968 (see Conviser Affid. of June 28, 1968, Exh. G), tenants under the lease agreements with International, including both Delta and Ford, were instructed to send their rental monies to a Post Office box registered in the name of "International Park Corporation—Rental Account", which payments were now to be received and controlled by Talcott according to the aforementioned power of attorney. Delta and Ford paid their February and March rents in accordance with these instructions.

On February 8, 1968, in a suit by Clark against Hogan and International, Judge Ryan of this Court entered a default judgment against Hogan and International, ordering the entry of final judgment against Hogan in the sum of $85,000.00 with interest thereon from July 1, 1965, and against Hogan and International jointly in the sum of $77,000.00 together with interest thereon from April 1, 1966. Judgment was en-

tered on February 13, 1968 (see Friedman Affid. of July 30, 1968, Exh. A).

On February 21, 1968, an amended final judgment was entered *nunc pro tunc* as at February 13, 1968, which provided for recovery against Hogan in the sum of $183,813.96 and against International in the sum of $85,537.76.

On or about March 4, 1968, Clark served both Hogan and International with restraining notices, forbidding any sale, assignment or transfer, or interference with any property in which the judgment debtors possessed an interest. Similarly, the judgment creditor served Delta and Ford with restraining notices, forbidding their transfer of any property in their possession or control in which Hogan or International had an interest as well as any debts thereinafter to become due from either Delta or Ford to the judgment debtors.

On March 6, 1968, Talcott was served with a Notification of Issuance of Restraining Notice informing the company of the action taken against Hogan and International.

Subsequent thereto, on March 14, 1968, Talcott and Hogan sent letters to all the lessees of the judgment debtor instructing them that in the future all rents would be paid to James Talcott, Inc. directly (see Conviser Affid. of June 28, 1968, Exh. J). Delta and Ford, however, have paid no rents to Talcott since their receipt of the restraining notices, which rents amount to $31,373.76 owed by Delta and $6,520.64 owed by Ford.

Petitioner contends that any rents which Talcott received from the lessees of the judgment debtors after March 6, 1968, the date on which Talcott received notification that restraining notices had been served upon Hogan and International, were rents which should have been paid to the judgment creditor in partial satisfaction of the judgment herein and were thereby wrongfully transferred by Hogan and International and wrongfully received by Talcott, evidencing intentional violations of the express terms of the restraining notices for which respondents should be adjudged in contempt of this Court.

It is the position of Talcott, however, that not only are contempt proceedings inappropriate to the enforcement of a money judgment but, moreover, that the restraining notices are not valid as to the rental monies due under the Delta and Ford leases inasmuch as Talcott's right to those rents accrued by virtue of a valid assignment from International, dated December 1, 1965, more than two years prior to the entry of the judgment herein.

■    The enforceability of a judgment rendered in a United States District Court depends on the practice applicable in the state in which the district court is located. Fed.R.Civ.P. 69(a); United States v. Pearson, 258 F.Supp. 686, 690 (S.D.N.Y.1966); Ezell v. Equity Gen. Ins. Co., 219 F.Supp. 51, 52 (D.Or. 1962); United States for Use and Benefit of Grohne v. English Constr. Co., 95 F.Supp. 763, 764 (S.D.N.Y.1951).

The judgment creditor herein, arguing in support of the applicability of New York law, cites Morris Plan. Indus. Bank v. Gunning, 295 N.Y. 324, 67 N.E.2d 510 (1946) for the proposition that New York will apply the law of the forum when considering issues involving the application of garnishment, attachment and other enforcement procedures.

■    An assignment, however, by a lessor of his right to future rents which are to become due from month to month, as security for a loan, and which is expressly made conditional upon the assignor's default as to the principal or interest on the loan, is a "conditional assignment", 4 Corbin on Contracts § 876, at 513 (1951); Restatement of Contracts § 150 (1932), and is recognized as an effective present transfer to become payable in the future upon the occurrence of a specified event. Maloney v. John Hancock Mut. Life Ins. Co., 271 F.2d 609, 614 (2d Cir. 1959); Padgett v. Butler, 84 Ga.App. 297, 66 S.E.2d 194 (Div. 1, 1951).

Therefore, it must be clearly recognized that although the present action before this Court is an enforcement proceeding, the principal issue herein, that is, whether Talcott's right to the rental monies accrued prior to the issuance of the restraining orders, is one which can be resolved only by reference to the law of assignments.

In determining the applicable law of assignments, this Court must look to the law of the state which is most significantly related to the principal issue herein. Restatement, Second, Conflict of Laws § 350 at 163 (Tent. Draft No. 6, 1960). For it is evident that the free and easy mobility of modern times has made it necessary for the courts of this State to abandon their adherence to the traditional conflict of laws concepts in the areas of contracts and assignments in favor of utilizing the "grouping of contracts" doctrine, a more realistic approach which requires the application of the law of the state which has the primary interest in the problem forming the basis of the litigation. Speare v. Consolidated Assets Corp., 367 F.2d 208, 211 (2d Cir. 1966); Babcock v. Jackson, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283, 95 A.L.R.2d 1 (1963); Auten v. Auten, 308 N.Y. 155, 160–161, 124 N.E.2d 99, 102, 50 A.L.R.2d 246 (1954).

The present action demands interpretation by this Court of the rights and liabilities contained in the Deed and in the Assignment, both of which were executed and recorded in the State of Georgia. Both instruments recite that it is the intention of the parties thereto that the laws of Georgia be applied. The judgment debtor is a Georgia corporation, and the rents which are the subject matter of these proceedings emanate from property located within the State of Georgia. Therefore, since Georgia has the overwhelming interest in the determination of this Court, its law must be applied.

Under the law of Georgia, a deed which does not pass title but merely represents security for an existing debt is treated as a mortgage. Alexander v. Mortgage Co., 47 F. 131, 135 (S.D.Ga.1891). Similarly, instruments which appear to be deeds of present transfer but which provide for reconveyance of title to the mortgagor upon his faithful performance of all the covenants contained within related loan agreements are likewise considered to be mortgage agreements and are treated as such. Camp v. Teal, 44 Ga.App. 829, 163 S.E. 233 (Div. 2, 1932); Massillon Engine & Thresher Co. v. Burnett, 19 Ga. App. 487, 91 S.E. 786 (Div. 1, 1917); see Grady v. T. I. Harris, Inc., 41 Ga. App. 111, 151 S.E. 829 (Div. 2, 1930). In *Massillon,* supra, the purported deed was found by the court to be a mortgage in that it contained a divestiture clause to the effect that "should grantor, 'faithfully perform and keep all the covenants and agreements herein set out, this conveyance shall cease, determine and be void.'" A consideration of the deed herein discloses that it, too, recites that the judgment debtor (grantor) may continue to enjoy the rents without accountability to Talcott (grantee) and, further, that the deed would be cancelled by the grantee and surrendered to the grantor, the "owner of said property", when the underlying debt is fully discharged. It clearly follows, therefore, that the rights and liabilities under the deed should be interpreted in accordance with the laws of Georgia as to mortgage agreements.

The Deed herein recites:

"(7) In the event of any default in any of the covenants or conditions of this instrument, *at its option,* the Grantee may foreclose this instrument in any court of competent jurisdiction, and shall be entitled to the immediate appointment of a receiver for the collection of the rents of said premises during the pendency of such foreclosure. This right is cumulative and is not a waiver of the right to advertise and sell under Grantee's right of advertisement of sale." (Emphasis supplied.)

\* \* \* \* \* \*
"(10) The Grantor \* \* \* hereby assigns \* \* \* unto the Grantee \* \* \* all rents from the above described property hereafter accruing *as additional security for the indebtedness* and other items herein secured. \* \* \* The Grantor does appoint the Grantee its attorney to collect said rents with or without suit and apply the same, less expenses of collection to said indebtedness \* \* \* in such a manner as the Grantee may elect; *provided, however, that until there be a default under the terms of this deed, the Grantor may continue to collect and enjoy said rents without accountability to the Grantee \* \* \*.* This assignment of rents and power of attorney \* \* \* in event of default \* \* \* may be put into effect* independently of or concurrently with any of said remedies \* \* \*." (Emphasis supplied.)

Although couched in terms of a present transfer with a "power of attorney", it is apparent from the face of the instrument that the Grantee, or Talcott in this instance, does not become entitled to the rents at the time of the execution of the agreement nor upon the mere existence of a default by the Grantor. Inasmuch as it is set forth in the Deed that in the event of a default by the Grantor, the assignment "may be put into effect", the instrument clearly implies that the Grantee must take positive steps to effectuate its assigned rights to the rental monies.

The Supreme Court of Georgia has expressed what it considers are the necessary "positive steps" to effectuate an assignment of rents under a security agreement. In Penn Mut. Life Ins. Co. v. Larsen, 178 Ga. 255, 173 S.E. 125 (1934), the Court stated that "the grantor \* \* \* holding subject to the security deed, being in possession and receiving rent notes from his tenant \* \* \* may not be disturbed in his right to the rents by the holder of the security deed before entry upon the land

for the purpose of collecting 'the rents and profits thereof'."

█ A mortgagee who has lawfully obtained possession of the estate, without or before foreclosure, is a "mortgagee in possession" and as such has a right to the rents emanating therefrom. 59 C.J.S. Mortgages § 318, p. 427. Conversely, "[a] mortgagee who has not taken possession of the premises is not entitled to exercise acts of dominion or control over them, not being in any proper sense the owner or proprietor." 41 C.J. 622, § 594.

The Georgia Supreme Court further stated in Luther P. Stevens Inv. Co. v. Berry Schools, 188 Ga. 132, 136–137, 3 S.E.2d 68, 70–71 (1939) that:

" 'The term "mortgagee in possession" is applied to one who has acquired actual possession of the premises mortgaged to him, standing upon his rights as mortgagee and not claiming under another title, for the purpose of enforcing his security upon such property or making its income help to pay his debt; but the mere fact that the mortgagee *receives* the rents and profits does not constitute him a mortgagee in possession, unless he takes the rent in such a way as to take out of the hands of the mortgagor the management and control of the estate'. 41 C.J. 612, § 580. The fact that the grantor, under the provisions of the deed, was termed a tenant of the grantee was not such delivery of possession as to constitute the grantee a mortgagee in possession. *Neither did the fact that the defendant [mortgagee] \* \* \* after the loan had become in default, began to collect the rents and apply them to the indebtedness create such a relationship.* The deed contained a rent assignment, and provided that the grantee might collect the rents and profits in case of default. There was evidence that in pursuance of this assignment the plaintiff [mortgagor], after default of the loan, directed his tenant to pay the rent to the defend-

ant. Evidence in behalf of the defendant tended to show that this was the only control which it ever exercised over the property, that there was never any agreement for the grantee to take over the actual possession and control of the property, and that the grantor retained possession and control thereof at all times." See Few v. Pou, 32 Ga.App. 620, 627, 124 S.E. 372, 375 (Div. 2, 1924).

The Court, therefore, held that there was sufficient evidence to support the auditor's finding that the defendant had not attained the status of a "mortgagee in possession".[1]

Similarly, in the present action before this Court, there is no evidence that Talcott did anything more than collect the rental monies pursuant to a power of attorney and in accordance with the judgment debtor's instructions to the tenants in its effort to satisfy the unpaid balance of the outstanding debt. Inasmuch as it is apparent that under the law of Georgia the mere collection of the rents by the mortgagee, without more, is insufficient to establish that degree of management and control over the property to make the mortgagee a "mortgagee in possession" with the concurrent legal right to the rents and profits from the estate, Penn Mut. Life Ins. Co. v. Larsen, supra; Luther P. Stevens Inv. Co. v. Berry Schools, supra, it follows that at the time that the restraining orders were issued by the judgment creditor herein, the legal right to the rents was still vested in the judgment debtor. Consequently, the rents were properly restrained.[2]

It is, therefore, the order of this Court that all rental monies which came into the possession of Talcott subsequent to Talcott's receipt of the March 6, 1968 Notification of Issuance and

---

1. Although the judgment creditor herein relies on Walton v. Horkan, 112 Ga. 814, 38 S.E. 105 (1901) in support of the proposition that an assignment is effective as of its execution date rather than as of the date when the right to performance thereunder becomes due, the case is inapplicable to the present action in that the assignment therein was not created as security for an underlying obligation.

2. Assuming, *arguendo*, that New York law were applicable in this instance, it appears that this Court would be constrained to reach a different result. Under the law of New York, an assignment of rents which takes effect upon the default by the mortgagor as to the principal or interest of the underlying indebtedness is considered to be a pledge of property, given as security for the debt, to which the mortgagee is not entitled until he reduces it to possession. Prudential Ins. Co. of America v. Liberdar Holding Corp., 74 F.2d 50, 52 (2d Cir. 1934); Empire State Collateral Co. v. Bay Realty Corp., 232 F.Supp. 330, 335 (E.D.N.Y.1964); In re Berdick, D.C., 56 F.2d 288; In re Banner, 149 F. 936, 939 (S.D.N.Y.1907); Sullivan v. Rosson, 223 N.Y. 217, 119 N.E. 405; Dime Sav. Bank of Brooklyn v. Altman, 249 App.Div. 174, 176, 291 N.Y.S. 417, 420 (2d Dep't 1936); Globe Indem. Co. v. Park-Lexington Corp., 154 Misc. 854, 860, 277 N.Y.S. 407, 412–413 (Sup.Ct. 1935). As clearly stated in In re Berdick, supra, 56 F.2d at 289:

   "After some fluctuation on the point, the New York courts have held that a clause in a mortgage assigning rents to the mortgagee in the event of default operates merely as a pledge of rents and does not entitle the mortgagee to them until he or a receiver in his behalf takes possession *or until he attempts in some fashion to assert his right to the rents*." (Emphasis supplied.)

   In Sullivan v. Rosson, supra, 223 N.Y. at 224–225, 119 N.E. at 407, it was stated that:

   "A senior mortgagee desiring to obtain such rents to apply upon his mortgage *should actually possess himself of them or of the right to them through some mutual arrangement therefor * * *.*" (Emphasis supplied.)

   Accordingly, if New York law were to apply, it would be the opinion of this Court that Talcott, once it commenced actual collection of the rental monies with the consent of the mortgagee pursuant to the power of attorney executed by the judgment debtor, became entitled to receive them. Prudential Ins. Co. of America v. Liberdar Holding Corp., supra; In re Berdick, supra; Sullivan v. Rosson, supra.

Service of Restraining Notice as well as all rental monies to become due in the future shall be paid over to the judgment creditor pursuant to CPLR § 5225(b). However, because of the fact that the application of New York law would have produced a different result herein, and inasmuch as the law of Georgia is somewhat misty regarding the within issue, this Court is not inclined to declare any of the parties to this action in contempt of court. In addition, it has been held in New York that assent by a judgment debtor-mortgagor to collection of the rents and profits by a third-party mortgagee is not a violation, even where the assent is given after the imposition of the restraint, in that the mortgagor's assent to entry by the mortgagee is not a "transfer" but merely a recognition of a theretofore existing right. In re Selonke's Estate, 49 N.Y.S.2d 160, 161 (Surr.Ct.1944); Weinstein-Korn-Miller, New York Civil Practice, ¶ 5222.12, n. 23 at 52–293 (1967).

After due consideration and for the above-stated reasons, the motion by third party in interest Talcott to vacate the restraining notices served on Delta, Ford and the judgment debtor, insofar as they affect the rents owed by Delta and Ford, and for damages, is herein denied. Petitioner's motion to adjudge Hogan, International and Talcott guilty of contempt of this Court and for an order requiring Talcott to deliver to petitioner all sums of money received from or on behalf of the tenants of the judgment debtor, on or after March 6, 1968, is granted only to the extent indicated herein.

So ordered.

## On Reargument

James Talcott, Inc. (hereinafter referred to as "Talcott"), the third party in interest herein, moves for reargument of a prior opinion of this Court, pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, for the relief requested in its prior notice of motion dated July 2, 1968 and for such further relief as this Court may deem just and proper.

Having considered Talcott's supporting Memorandum of Law, this Court is constrained to grant the motion for reargument and presently resolve the contentions raised therein.

■■■■ The movant correctly interprets the law of Georgia in its statement that the existence of a divestiture clause within the terms of an instrument which purports to be a deed does not necessarily relegate the instrument to the status of a mortgage. Rather, whether an instrument is found to be a deed or a mortgage often depends upon the mode of defeasance as provided for by the terms of the instrument in question. Hill v. Smith, 163 Ga. 71, 135 S.E. 423 (1926); Pitts v. Maier, 115 Ga. 281, 285, 41 S.E. 570, 571 (1902); Burckhalter v. Planters' Loan & Sav. Bank, 100 Ga. 428, 28 S.E. 236 (1897). These cases stand for the proposition that it is the general rule of thumb that where the interest acquired by the holder of the instrument is automatically extinguished by the voluntary act of the debtor alone, such as payment of the outstanding obligation, the instrument smacks of lien or mortgage qualities, as opposed to an interest which can only be extinguished by a separate act performed by the lender, indicating that title has in fact been transferred and that the instrument effecting that transfer is a deed. Burckhalter v. Planters Loan & Sav. Bank, 100 Ga. at 432–433, 28 S.E. at 238.

Above and beyond the general rule as set forth above lies the controlling consideration to a determination herein, that being the actual intent of the relevant parties to the instrument. Hill v. Smith, supra. As clearly stated therein:

"Sufficient words are used in the deed for the ascertainment of the intention of the parties, and it is our duty to enforce that intention 'irrespective of

all technical rules of construction.'"
135 S.E. at 426.

With reference to the above-cited cases, in each instance the Court specifically found that it was the clear intention of the parties that the instrument was to be a deed which vested an absolute fee in the grantee. In *Burckhalter*, it was the opinion of the Court that the contract was "plain and unambiguous" in that regard. In *Pitts*, the Court stated that the document unquestionably passed title. Similarly, in *Hill*, the Court, although seemingly superficial in its factual analysis, concluded that the intent of the parties was clear that the document was meant to be a deed.

In the instant case, not only do the facts not indicate that as a result of the execution of the instrument in question an absolute fee vested in the grantee, but, moreover, clearly evidence the intention of the parties to afford to the grantor that kind of flexibility which only a lien or mortgage device allows.

In addition to the factors which contributed to the rationale of this Court in its prior opinion, which factors need not be repeated at this time, it is clear that the grantor herein is referred to as the "owner" of the property both in the deed itself and in the subordination agreement which was executed on June 13, 1966. Further, the fact that Talcott's interest was a subordinate one in view of both the superior lien and encumbrance in favor of Marvin P. Hallford (see Deed to Secure Debt, ¶¶ 5–6), and the subsequent subordination agreement entered into with the Mutual Life Insurance Company of New York, indicates to this Court that the instrument in question was never intended to convey title to the grantee, but, rather, merely represents part of a structure of preferred security interests.

Accordingly, Talcott's motion for reargument is granted, and, upon reargument, this Court adheres to its prior determination.

So ordered.