In the Matter of PERIMETER PARK
INVESTMENT ASSOCIATES,
LTD., Debtor.

ACACIA MUTUAL LIFE INSURANCE
COMPANY, Plaintiff,

v.

PERIMETER PARK INVESTMENT
ASSOCIATES, LTD., Defendant.

Bankruptcy No. B77–2456A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Dec. 14, 1979.

**474**

James E. Massey, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for plaintiff Acacia.

Charles E. Campbell, Hicks, Maloof & Campbell, Atlanta, Ga., for defendant Perimeter Park.

### OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

### FINDINGS OF FACT

The court presently has before it motions by the plaintiff seeking (1) Dismissal of the Chapter XII case, (2) Sequestration and turnover of the rentals from the real property involved in this case and (3) Payment of all funds held by the debtor in excess of $20,000.00. Defendant has filed a Motion for Partial Summary Judgment as to the question of rents.

Defendant, Perimeter Park Investment Associates, Ltd., filed a petition seeking relief under Chapter XII of the Bankruptcy Act on September 15, 1977. Pursuant to order of this court, the debtor has been operating its business as Debtor in Possession since that time. The property which the debtor is operating is an office park located in DeKalb County, Georgia. The park had been purchased from Mr. Shouky A. Shaheen, the defendant agreeing to assume all of the obligations of Mr. Shaheen under a Deed to Secure Debt from Mr. Shaheen to Draper-Owens Company, which was subsequently assigned to Acacia Mutual Insurance Company, the plaintiff in this action.

Throughout this case the defendant, as debtor in possession, has collected all rents and profits generated by the office park. In a complaint filed on April 20, 1978, plaintiff requested that the court require the defendant to turn over to the plaintiff the rental income accumulated during the pendency of this Chapter XII case and held by the defendant at that time, as well as all rents collected in the future. Defendant filed a Motion for Summary Judgment on May 22, 1978, claiming that plaintiff had no interest in any rents collected prior to April 20, 1978, and that any other rentals were for additional security.

The plaintiff contends that the Deed to Secure Debt which was assigned to Acacia conveys title to the rents as well as the property, and that the security deed provides for an absolute assignment of rents. Plaintiff, argues that all rents received by the debtor after default belong to the plaintiff by operation of law and under contract by the security deed. Plaintiff argues that, even if the assignment of rents is determined to be merely additional security, the value of the real property is less than the amount of the debt and the additional security is thus necessary in this case.

The defendant-debtor argues that the assignment of rents is clearly as additional security, and that, moreover, said assignment clause requires that the plaintiff take some sort of action toward defendant before it would be entitled to the rents under state law. Defendant claims that such action was not taken until April 20, 1978, when the plaintiff filed its motion for sequestration and turnover of the rents.

The plaintiff has also requested the court to dismiss the case on the grounds that no

plan could be confirmed over the opposition of the sole secured creditor where the plan seeks to remove the secured creditor's lien by use of Section 461(11) of Chapter XII of the Bankruptcy Act.

On November 8, 1978, the court had entered a valuation order, anticipating the possibility that Section 461(11) would be utilized in the case. By order of Judge Henderson, U.S. District Court, Northern District of Georgia, June 29, 1979, said order was vacated, the District Court providing that " . . . that portion of the November 8th order which provides for extinguishment of Acacia's lien, upon the payment of cash or upon the approval of another method for satisfaction of the lien by the debtor must be vacated."

Subsequent to this ruling by the District Court on appeal, both parties have filed amended plans which are virtually identical, and do not provide for the extinguishment of Acacia's lien.

## CONCLUSIONS OF LAW

I. *Rents Collected Prior to April 20, 1978*

Earlier this year, the U.S. Supreme Court, in the case of *Butner v. U. S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) dealt with the issue of who was entitled to the rents and profits from mortgaged property in a Chapter XI rehabilitation case. The court rejected the Third and Seventh Circuits' approach which had:

> "adopted a federal rule of equity that affords the mortgagee a secured interest in the rents even if state law would not recognize any such interest until after foreclosure. . . . Under this approach, no affirmative steps are required by the mortgagee—in state or federal court—to acquire or maintain a right to the rents." *Butner* at 53, 99 S.Ct. at 917.

The court in *Butner* adopted the view taken by most of the circuits that the issue should be resolved by the Bankruptcy Court by reference to state law, observing that Congress had not enacted a uniform law on this subject, thereby leaving "the determination of property rights in the assets of a bankrupt's estate to state law." *Butner* at 54, 99 S.Ct. at 918; See also 4A *Collier on Bankruptcy*, Section 70.16 at 157–165 (14th Ed.); Hill, *The Erie Doctrine in Bankruptcy*, 66 Harv.L.Rev. 1013 (1953).

The *Butner* court notes that, in general, states follow two lines of thought with regard to assignment of rents. The majority of states require that a mortgagee gain *possession* of the property "by means of a foreclosure, the appointment of a receiver for his benefit or some similar legal proceeding" before it gains rights to the rents. *Butner* at 53, 99 S.Ct. at 917; 4A Collier on Bankruptcy, (14th Ed.) at 157, 158. Several other states, referred to as "title states" hold that "the mortgagee is automatically entitled to possession of the property, and to a secured interest in the rents." *Butner* at 52, 99 S.Ct. at 916; Gose, *The Efficacy of an Assignment of Rents and Profits in Bankruptcy*, 12 Real Property, Probate, and Trust Journal 507, 508 (1977). In a pure title state an assignment of rents clause would, in fact, be superfluous. Comment, *The Mortgagee's Rights to Rents and Profits following a Petition in Bankruptcy*, 60 Iowa L.Rev. 1388, 1390 (1975). Seldom, however, does a state follow either one of these theories to the letter.

> "Most state statutes and case holdings fall between these two polar positions, . . . In these states, the parties may bargain for a provision granting the mortgagee a right to rents and profits upon default, although *such an agreement does not in itself create a valid lien on the property's income for the benefit of the mortgagee. Instead, the mortgagee is required to take some sort of additional action* before he can actually collect the income to which his security interest attaches. In these states, a rents and profits clause can be viewed conceptually as valid but inoperative until it is 'activated' by some act of the mortgagee." *Id.*, 60 Iowa L.Rev. at 1390 (1975). (Emphasis supplied)

Georgia is both a "lien" and "title" state depending upon the type of instrument being used.

" . . . the mortgage contains a defeasance clause; that is, a provision that upon payment of the debt, the instrument shall become null and void. If a 'security deed' contained such a provision, it too would be thereby converted into a mere mortgage, but a true security deed has no defeasance clause, although it may provide for a reconveyance after payment, or a cancellation. The difference in effect is considerable. A security deed passes title whereas the mortgage creates a lien only." Pindar, *Georgia Real Estate Law*, § 21–4 at 780; (1979 ed.) *Dean v. Andrews*, 236 Ga. 643, 644, 225 S.E.2d 38 (1976).

The fact that a security deed, as used in the instant case, passes title in Georgia does not end the inquiry. A "title" state by statute or case law may place restrictions upon the right of the lender to the possession and recovery of rents and profits. *Butner*, 440 U.S. at 53, 99 S.Ct. 914; 60 Iowa L.Rev. at 1390.

Illustrative of the group of Georgia cases which hold that the lenders's rights to the rents and profits *do not* attach automatically or immediately upon default is *Stevens v. Worrill*, 137 Ga. 255, 73 S.E. 366 (1911). That case dealt with a deed to secure debt and the subsequent death and default by the mortgagor and the attempt by the lender to force the widow to account for the rents and profits from the land prior to the foreclosure. The court refused to force her to do so, and stated that:

"If Worrill himself had continued in life and in possession of the lands conveyed by the security deed to Stevens, he would have had the right to collect and use the rents and profits growing out of the land, and to continue to do so even after default in the payment of the debt secured by the deed, until the holder of the deed should bring an action to recover the land, or other appropriate proceedings to subject the land and mesne profits to the debt secured by that deed." at 257, 73 S.E. at 367.

One fact which distinguishes the *Worrill* case from the instant one is that no assignment of rents was entered into as part of the agreement. This fact was present, however, in *Penn Mutual Life Ins. Co. v. Larsen*, 178 Ga. 255, 173 S.E. 125 (1933) where the security deed contained a clause stating that upon default:

"the parties of the second part may *enter upon said premises* and collect the rents and profits thereof, may sell the said property at auction . . . " at 256, 173 S.E. at 125. (Emphasis supplied)

The court held that an attorney who had been assigned a rent note covering part of this period after default but prior to foreclosure or the creditor coming into possession of the property was entitled to retain the note. See also *Luther P. Stevens Inv. Co. v. Berry Schools*, 188 Ga. 132, 3 S.E.2d 68 (1939), *Ivor B. Clark Co. v. Hogan*, 296 F.Supp. 398 (S.D.N.Y.1968).[1]

Throughout the *Larsen* case, as well as the other Georgia cases on the issue, runs the conclusion that in Georgia;

" . . . *(r)ents and profits are incorporeal hereditaments, part of the bundle of rights known as possession, and a lender out of possession is not entitled to receive rents.*" Pindar, *Ga. Real Estate Law*, § 21–14.2 (1979 ed.).[2]

---

1. The case cited by the plaintiff in support of its argument that the plaintiff was entitled to the rents and profits from the moment of default, *Padgett v. Butler*, 84 Ga.App. 297, 66 S.E.2d 194 (1951), is not applicable to the present case. In that case, the grantor's widow was found liable for the rents and profits collected after default since her husband had in fact signed an assignment of the rents, unlike the case of *Stevens v. Worrill* discussed above, where the widow's deceased husband had not. See also Pindar, § 21–14.2.

2. Although the Court in *Butner* declined to rule upon the question of what North Carolina law provided relating to the rents issue it did include in a footnote a brief survey of the law of that state. The apparent conclusion reached there as to North Carolina case law is very similar to the conclusion reached by this court today from its analysis of the Georgia case law.

"North Carolina has been classified as a "title" State, Comment, The Mortgagee's Right to Rents After Default, 50 Yale L.J. 1424, 1425, n. 6 (1941), although it does not adhere to this theory in its purest form. Un-

██ The right of the lender upon default of the debtor *and after coming into possession of the property* in Georgia is to have the rents and profits applied toward the debt if the property is insufficient to pay the debt. *Merchants' & Mechanics' Bank of Columbus v. Sewell*, 61 F.2d 814, 817 (5th Cir. 1932); *Hart v. Respess*, 89 Ga. 87, 14 S.E. 910 (1892); *Dawson v. Equitable Mortgage Co.*, 109 Ga. 389, 34 S.E. 668 (1899); *Aiken and Ward Ga. Foreclosures & Confirmation*, § 2–4. The assignment of rents in a deed to secure debt in Georgia is thus treated as expressing in contractual terms the mortgagee's interest in the rents and profits as additional security.

██ The lender can attain the rights to the rentals by gaining actual possession, or:

"he may assume the possessory right to receive rents by notice to occupants or tenants. Thereafter, all rents must be paid to the lender or his agent, and are credited against the secured debt after deducting the costs of collection." *Pindar*, § 21–14.2.

██ In this case, the lender was prevented from taking such affirmative action by the existence of the automatic stay provided for in Bankruptcy Rule 12–43. The lender did, however, take the substituted action of filing a complaint for sequestration and turnover of the rents on April 20, 1978. See *In re West Peachtree Tenth Corporation*, B77–1147A (July 7, 1978) (Robinson, B. J.). Defendant's motion for summary judgment as to the rents accruing before April 20, 1978, will, therefore, be granted.

II. *Rents Accruing After April 20, 1978*

██ It is well established that in a fact situation such as is presently before this court, "a Chapter XII court has summary jurisdiction to order a turnover of property in the hands or a mortgagee." *In re Coloni-*

*al Realty Investment Co.*, 516 F.2d 154, 158 (5th Cir. 1975); 11 U.S.C. § 906. The recognition that the court can order retention of the main property of the debtor also extends to the rents and profits from the property. See *In re Colonial* at 158, 159. That is, if the debtor is entitled to the continuous use of the tree during the rehabilitation period, if rehabilitation is continuously demonstrated to be possible, surely he is also entitled at the same time to the use of the fruits of the tree. Loss of the rents by a debtor would be the equivalent of loss of the real property which the statutory scheme of Chapter XII does not permit so long as the evidence militates in favor of a possible successful rehabilitation plan. As Judge Herzog stated in *In re Bermec Corp.*: *

"If retention of the equipment by the debtor is the premise, then collection of the rentals is the natural corollary. In *Yale*, retention and use of the trucks and trailers was all that was required, since the debtor derived its income from its trucking business. In the case sub judice, retention of the trucks standing alone, is meaningless since it is engaged in the business of leaving its rolling stock to others and its source of income is the rentals resulting therefrom. To permit retention of the trucks and trailers and yet deprive debtor of the income would be contradictory; it would defeat the reorganization as surely as would surrender of the property to the leaseholders forthwith."

██ In this case, the debtor derives its income from the rentals generated by the Office Park. It is difficult to see how the debtor could be expected to continue to operate if it were to be deprived of the rentals. It would have no business to attempt to rehabilitate. Therefore, in the absence of a showing by evidence that reha-

---

der its case law, a mortgagee is entitled to possession of the mortgaged property upon default, and need not await actual foreclosure. Such possession might be secured either with the consent of the mortgagor or by an action in ejectment. But so long as the mortgagor does remain in possession, even

after default, he—not the mortgagee—appears to be entitled to the rents and profits." *Butner*, 440 U.S. at 52 n. 3, 99 S.Ct. at 917.

* *In re Bermec Corp.*, S.D.N.Y. No. 71–8–291, opinion dated July 15, 1971, (B. J. Herzog), affirmed 445 F.2d 367 (2d Cir. 1971).

bilitation is unreasonable to expect, the payment of the accumulation of rents, or the current rents to the creditor cannot be allowed. In addition, it has not been shown by the secured creditor at any time that the security of the real property itself, aside from the additional security of the current rentals, constitutes insufficient adequate protection to the creditor for the debt, or that a successful Chapter XII plan is an unreasonable expectation. As prior decisions have established, even a showing of lack of equity for the debtor in the real property security is insufficient to demonstrate that confirmation of a Chapter XII plan is unlikely. Confirmation via one of the methods to provide adequate protection allowed by Section 461(11) generally offers a spector of a reasonable possibility. *In re Carousel Limited Partnership*, 3 Bankr.Ct. Dec. 737 (N.D.Ga.1977); *In re Pickett, Gardner, Landes and Associates*, 3 Bankr. Ct.Dec. 727 (N.D.Ga.1977); *Pine Gate Associates*, 3 Bankr.Ct.Dec. 137 (N.D.Ga.1976); *In re Nevada Towers Assoc.*, 3 Bankr.Ct. Dec. 583 (S.D.N.Y.1977).

### III. *Dismissal*

The plaintiff's argument that the debtor's plan cannot be confirmed because of a recent decision in the Northern District of Georgia entitled *In re Stillbar*, 4 Bankr.Ct. Dec. 452 (N.D.Ga.1978) affirmed by District Court (Case No. B77–3370A) is based upon two points.

The first is that a plan, at least in this district, under Section 461(11), cannot "be used to remove the lien of the secured creditor · from the property . . . " (Plaintiff's brief filed December 22, 1978, p. 2). Inasmuch as the debtor has amended its original plan and no longer seeks to remove the secured creditor's lien, the plaintiff's said argument is moot. Plaintiff's second argument is that the "*Stillbar* case stands for the proposition that no particular act is required by a secured creditor to perfect a security interest in rents where the security deed provides for an assignment of rents upon default." (Plaintiff's brief of December 22, 1978, p. 2). *Stillbar* is not control-

ling or applicable on this issue, however, because in that case the District Court noted "that the creditor had taken sufficient steps to perfect its rights prior to institution of the Chapter XII proceeding, assuming that such were required."

Moreover, the present case is distinguishable from *Stillbar* in that the language used in the assignment of rents itself lends itself to the interpretation, as the *Stillbar* Court noted was the case in *Ivor B. Clark Co. v. Hogan*, 296 F.Supp. 398 (S.D.N.Y.1968), that it was as additional security. The *Stillbar* court noted that in *Hogan*, the assignment of rents stated that it "*may* be put into effect." *Hogan* at 404. The *Hogan* language is not so different from the language used in paragraph 9 of the security deed here under review which provides that:

> "Default . . . shall terminate the Grantor's right to possession . . . *at the option of the Grantee*." (Emphasis supplied)

The agreement itself is clear that mere default is insufficient in and of itself by the very terms of the agreement to cause the lender to be entitled to the rents and profits immediately. As in *Hogan*, "the instrument clearly implies that the Grantee must take positive steps to effectuate its assigned rights to the rental monies." at 404. Further evidence of the intent of the parties is contained in the "Assignment of Lessor's Interest in Lease" which is, in effect, an assignment interest in the rentals, and which states that it is:

> "*For The Purpose of Additionally Securing:* . . . payment of the indebtness evidenced by that certain note or bond (including any extension or renewals thereof) dated November 2, 1972, in the principal sum of Two Million Five Hundred Thousand and no/100 Dollars ($2,500,000) made by Shouky A. Shaheen . . . " (Emphasis supplied)

### CONCLUSION

It is the determination of this court that (1) for the above-stated reasons, the plaintiff's motion for turnover of rentals and

payment of rentals over $20,000 be DE-NIED, that (2) the defendant's motion for summary judgment as to rentals collected prior to April 20, 1978 be GRANTED, and (3) plaintiff's motion to dismiss the case be DENIED. A separate order and judgment shall be entered pursuant to Bankruptcy Rule 921.